Albert M. SPOUND et al.,
Plaintiffs-Appellees,

v.

MOHASCO INDUSTRIES, INC., et al.,
Defendants-Appellants,

Albert M. SPOUND et al.,
Plaintiffs-Appellants,

v.

MOHASCO INDUSTRIES, INC., et al.,
Defendants-Appellees.

Nos. 75–1385, 75–1386.

United States Court of Appeals,
First Circuit.

Argued March 1, 1976.

Decided April 16, 1976.

As Amended on Denial of Rehearing
May 13, 1976.

Daniel O. Mahoney and George L. Greenfield, Boston, Mass., with whom Reginald H. Howe, Palmer & Dodge, and Wolf, Greenfield & Sacks, Boston, Mass., were on brief, for Mohasco Industries, Inc., and others.

Jerome P. Facher, Boston, Mass., with whom Robert F. McLaughlin and Hale & Dorr, Boston, Mass., were on brief, for Albert M. Spound and others.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

This action, initiated in 1970 as a petition for declaratory judgment, and subsequently enlarged, presents a two-pronged claim, for royalties under a 1961 license agreement and, after the agreement was purportedly cancelled by the licensor in 1972, for damages for subsequent infringement of two of the patents that had been licensed. A. M. Spound, although but one of three plaintiffs, will be referred to as plaintiff. He was, at all times, engaged in designing and manufacturing furniture, including upholstered livingroom furniture. The original licensee was defendant Super Sagless Spring Corp., of which one Katz was president. Defendant was at all times engaged, inter alia, in making metal furniture components. There are two other, connected, corporate defendants, one of which, Mohasco Industries, Inc., a furniture manufacturer, acquired the Super Sagless stock in 1963. For simplicity, the defendants may be treated as one. Defendant's position is that nothing was due under the agreement, and that it was improperly cancelled, but that if, in fact, it was properly cancelled, the patents were invalid and not infringed. The case was tried to a jury, which answered special questions, all favorably to plaintiff. After some modification in plaintiff's disfavor, a judgment was entered determining, inter alia, that the first patent was valid and infringed and that the second was invalid, and assessing damages for breach of the agreement and for infringement. Both sides appeal.

In 1957 plaintiff conceived the idea of a reclining livingroom chair which would have a headrest that was concealed within the back when the chair was upright, thereby presenting a low profile, but which would emerge automatically (pop-up) when the user, by leaning back, caused the chair to recline. The chair would also have an extending legrest, but this is not involved. Plaintiff spent a considerable time endeavoring to reduce his idea to practice, and in due course sought, and received, confidential help from Katz. Katz introduced plaintiff to one Martin, a mechanical engineer.

On September 5, 1957, plaintiff filed an application, and on August 2, 1960, received Patent No. 2,947,347, Spound, Automatic Projecting Headrest for Reclining Chairs. Meanwhile, on January 17, 1958, Spound and Martin applied for a patent on Reclining Chair Headrest Constructions, which ripened into Patent No. 2,884,992, on May 5, 1959. On October 24, 1958, Martin and Spound filed a further application, Automatically Projectible Headrest, receiving Patent No. 2,958,374 on November 1, 1960. Finally, Spound, alone, filed on February 15, 1961, Application No. 89,402, Headrest for Reclining Chairs Including Latching Means. This application was rejected on July 14, 1961, on the basis of '374 and a legrest patent cited by the examiner, and was not pursued.

Briefly, '992 was an improvement in result over '347; '374 was an improvement over '992 in internal operation, and '402 principally added a latch to prevent accidental depression of the headrest. '347 was never manufactured. '992 was well received and, commencing in 1958, was sold by plaintiff and various licensees in substantial quantities, defendant making most of the mechanisms. However, the concept was better than the product. Functional difficulties resulted in so many returns that the various chair manufacturers lost interest, and in the early '60's the market dried up. It was anticipated that the operational faults could be remedied. This, however, did not occur for a long time.

The parties had long considered a royalty basis license for defendant, and in January, 1961 negotiations came to a head. During the next two months plaintiff and Katz discussed terms, and their counsel discussed form. Besides general protection of their clients, it is apparent that counsel had special matters in mind. One of these was that plaintiff's receipts should be considered capital gains. Another was that defendant wished separate documents, so that it could exhibit only part of the agreement to an interested competitor. In retrospect, it seems that the handling of these subsidiary matters may have been what led to the present difficulties. Evidence, duly objected to by defendant on the ground of the parol evidence rule, indicated that the principals intended that defendant should have an exclusive right to manufacture the mechanism for plaintiff's chair in any form, and was to pay a single royalty of one dollar a set irrespective of what patents were involved, so long as that right was protected, so that to the extent the agreement appears more limited it was simply faulty draftsmanship. Under the circumstances of this case, where defendant is now claiming the apparent windfall of having to pay nothing, this is an appealing contention. The question is, is it open?

[In a somewhat lengthy addendum to this opinion we review the merits of the parties' analysis of a license agreement entered into on April 1, 1961 and the events attending on its execution, concluding that the jury could warrantably find in accordance with plaintiff's contentions. Because no questions of law are involved, but only highly subjective facts of no interest to anyone but the parties, no purpose would be served by including this in the permanent reports, and the addendum will be retained in our file of unpublished opinions.]

■ It may be unfortunate for defendant, particularly in light of the jury's finding a fair royalty in the '70's to be $3.75, rather than the earlier figure of $1.00,[1] that, like Aesop's dog who thought it saw another bone in the water, it overreached and lost what it had, but, as defendant's brief said of plaintiff in another connection, he "made a deliberate tactical choice . . . [and] must take the consequences." Defendant was not entitled to escape liability on the ground that the agreement permitted free use of the patents. Corresponding-

---

1. The evidence warranted this finding. The jury was not obliged to find $1.00 to be the "established" royalty on the ground that plaintiff's new licensees were so charged, when they were to have to compete against already entrenched defendant, and the whole matter was in litigation.

ly, plaintiff was within his rights in terminating it on account of defendant's default.

We turn to the second part of plaintiff's case, the damage claim for infringement of the '992 and '374 patents subsequent to the 1972 cancellation of the agreement. No appeal is pressed regarding the jury's determination that defendant's chair infringed—the dispute concerns validity. Here we find a singular situation. The sole question put to the jury on this issue was,

"(18) Do you find that the Spound inventions of '992 or '374 were not obvious to a person with ordinary skill in the furniture art when the inventions were made?" (Emphasis suppl.)

As a matter of syntax, this means the invention of '992 or [the invention of] '374.[2] As such, this question corresponds exactly with question 16—

"(16) What do you find as a reasonable per chair royalty to be paid by the defendants for infringement of patents '992 or '374?"

But while 18, read with 16, saves from attack the royalty finding, strictly it does not indicate that a particular patent was found to be non-obvious.[3]

■ The court, however, did not so conclude, but found that the jury had accepted the validity of '992. On reflection, we accept that decision. On the evidence before

it, the jury could not have found '992 obvious if it had found '374 non-obvious. We note, also, that defendant does not challenge the judgment below on this basis. However, we are left, in any event, with no jury finding as to the non-obviousness of '374. This situation plaintiff must be deemed to have assented to, since he failed to object to the form of the questions. Hence we are in the position, taking a portion of plaintiff's appeal out of order, simply of passing upon whether the court's independent finding of invalidity, because of double patenting, was warranted.[4]

The court found,

"A comparison of claim 1 of '374 and claim 9 of '992 confirms that the only difference between the two inventions is the configuration of the lost motion device. Since lost motion devices are old, a substitution of one such device for an equivalent would not seem to amount to a patentable difference." (Footnote omitted.)

Although plaintiff says there is much more to '374, the court had before it not only the testimony of defendant's expert, to which, in all candor, we do not attach great weight in view of much of the prior art he thought material, but significant testimony of plaintiff's own witness. Basically, the difference between '374 and '992 was a different

---

**2.** This reading accords with the court's charge. In discussing this issue, it said, "The burden of establishing the invalidity of either the Spound '992 or the '374 patents is upon the defendants. . . . In considering whether either of the Spound patents was obvious . . . ." While the jury might not have recalled this language precisely, it certainly did nothing to contradict what would appear to have been the plain meaning of the question put by the court.

**3.** It is interesting to note that throughout his briefs plaintiff disregards the "or" in question 18, and reads it as "and;" indeed, pointing out that the "jury's answer was clear and unambiguous." However, where the shoe is on the other foot, and he is anxious to retain the full royalty in case we should affirm the judgment invalidating '374, plaintiff is careful to point out that because of the "or" in question 16, "The answer was $3.75 which clearly indicated that for infringement of *either* the '992 *or*

the '374, a royalty of $3.75 was due." (Emphasis in orig.) Such Janus-like perceptions exceed acceptable advocacy.

**4.** Frankly, we are happy that this is the case. Whatever may be a party's right to a jury trial, experienced judges who have spent days deciding a single question of obviousness must regret that such questions should be put to an inexperienced jury on a complicated record, to decide in a matter of hours. Even if it be thought that juries are as competent as judges, they must rely on their memories of expert testimony after days of trial, an exceptionally difficult task in this area. In such a circumstance, the least a court owes the parties is "a special duty of vigilance in . . . reviewing verdicts," cf. *Stone v. Essex County Newspapers, Inc.,* Mass., 1975, 330 N.E.2d 161, 170, by which we mean that the court should not hesitate to set findings aside in case of substantial doubt.

mechanism to accomplish the same result. Plaintiff's expert testified that lost motion devices, post, of this character are legion, and a matter of choice. More important, he stated, with relation to '992, that the pop-up concept, with lost motion, was the invention; that "the design of a linkage mechanism to elevate a headrest is a mechanical engineering problem," and that he believed a good mechanic, once given the instructions of what was wanted, could have carried them out.

It may well be that the '374 mechanism was an improvement over '992, but that does not necessarily save the patent. Granted there was no exact anticipation, still there must be something more than an obvious improvement over the prior patent. E. g., Preformed Line Products Co. v. Fanner Mfg. Co., 6 Cir., 1964, 328 F.2d 265, 269–70, cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51. We are helped in concluding that '374 could be found invalid by the fact that it failed to remedy a deficiency in '992 which was, in fact, common to both. The operational difficulties that long persisted were due in part to the fact that sufficient dimensions were not supplied. While we would not void either patent for overgenerality, neither do we give them high marks with respect to disclosure. The court's conclusion of invalidity was warranted.

Upholding the jury's finding as to '992 would be easy, but for one problem. The evidence justified, if not compelled, a finding that plaintiff's chair was novel, and of substantial value, and, but for the '347 chair, unique. There was, moreover, a substantial difference between '347 and '992. The latter could be found to be, due to its "dwell," or lost motion feature, much more attractive to the user than, and inventive over, the former, whose headrest did not fully pop up until the final reclining position. The difficulty arises from the court's charge to the jury.

There was no error in charging simply that the burden was on defendant to prove invalidity. Defendant's complaint that the jury should have been told that the presumption of validity was weakened by the examiner's failure to have all the prior art before him must be overruled in light of the fact that the court never mentioned the heavy presumption which normally attaches to Patent Office decisions. Had such a burden been imposed upon defendant, it would have been appropriate to add defendant's requested qualification, viz., that to the extent there was relevant prior art not considered by the Patent Office, this burden was pro tanto weakened. However, the ordinary burden of persuasion to which the court limited its charge is a minimum that is never diminished. Rather, it "remains upon the alleged infringer throughout the proceeding and is in no sense dependent on the character of the proceedings before the Patent Office or the amount of prior art cited to, or considered by, the Patent Examiner." Chicago Rawhide Mfg. Co. v. Crane Packing Co., 1975, 7 Cir., 523 F.2d 452, 458, cert. denied, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976).

The court did err, in charging the jury that it was to measure obviousness from the standpoint of an ordinarily skilled furniture designer, without taking into consideration the knowledge of a person skilled in the mechanical arts. In so doing, it disregarded the record. Before filing the '992 application, plaintiff obtained the assistance of Martin, a mechanical engineer, and both '992 and '374 name Martin as a joint inventor. Even plaintiff's expert conceded that "the design of a linkage mechanism to elevate a headrest is a mechanical engineering problem." Obviousness as to this was not to be judged solely by the limited skill and assumed knowledge of a furniture manufacturer. See Graham v. John Deere Co., 1966, 383 U.S. 1, 35, 86 S.Ct. 684, 702, 15 L.Ed.2d 545, 566; Burgess Cellulose Co. v. Wood Flong Corp., 2 Cir., 1970, 431 F.2d 505, 509. It is true, as plaintiff points out, that the court admitted into evidence all that defendant offered with respect to prior art, but the ultimate issue was the standard by which obviousness was to be considered.

■ This erroneous instruction, omitting reference to what would be obvious to a mechanical engineer, would have faulted any jury finding that '374, the improved mechanism patent, was not obvious. '992's validity presents a different question. Here the most innovative aspect was that of the chair, and not the mechanical means. As a practical matter, we must find that a jury could not have found Martin's contribution to this patent inventive unless it had found the chair itself inventive. Since the idea of a pop-up headrest was, strictly, a furniture design concept, the test here was the knowledge of furniture designers. Accordingly, restricting the jury's consideration to what would be obvious in the furniture art was not prejudicial to defendant with respect to this patent.

Defendant's other points on appeal do not warrant discussion.

■ Continuing with plaintiff's appeal, we might, at first blush, fault the court for construing the dollar figure of general damages for infringement found in answer to question 17 to be simply alternative to the royalty found in question 16, multiplied by the number of chairs produced. However, a cumulative finding, awarding both amounts, could not be supported without an evidentiary basis. We find nothing outside of what is covered by royalties. Plaintiff's charge that defendant has "enjoyed" the patents for fourteen years must be taken with more than a grain of salt. During a number of those years defendant's enjoyment consisted of trying to make them function, for, as it turns out, plaintiff's benefit. For the balance, there is no evidence that plaintiff suffered any loss other than royalties, and for this he is now being compensated.

■ Finally, plaintiff asserts that he was entitled to penalty relief under 35 U.S.C. §§ 284 and 285. We do not reach those questions. Plaintiff made such a request at the trial and the court responded in its opinion as follows.

"Plaintiffs have requested treble damages (35 U.S.C. § 284) and attorneys' fees (35 U.S.C. § 285). Upon a review of the evidence in the case and of the history of the litigation, the Court is not of the opinion that this is the kind of case which merits such relief. Accordingly, plaintiffs' requests are denied."

Thereafter the court entered a multi-paragraphed judgment awarding only single damages, and costs that made no provision for attorney's fees. Plaintiff's notice of appeal specified, simply, two paragraphs, viz., the paragraph invalidating the '374 patent, and the paragraph which rejected the jury's finding of general damages. After the 30 days, but not before 60 days, had run, plaintiff successfully moved to amend his appeal to include the sections 284 and 285 matters. He asserted,

"The plaintiffs' Notice of Appeal did not specifically mention the matters set forth in Paragraphs 3 and 4 of the Substitute Notice of Appeal (the failure to award treble damages and attorneys' fees), there having been no mention of such matters in the June 6th Judgment itself."

The last clause could not be true. This was a final judgment. The monetary award, being in the exact amount represented by the jury's finding, was necessarily a rejection of plaintiff's demand that it be increased. The awarding of "costs and disbursements" was necessarily a denial of extraordinary costs. Nor was plaintiff correct in his further allegation that his specific and limited prior appeal raised matters contained in entirely different paragraphs. *Bach v. Coughlin,* 7 Cir., 1974, 508 F.2d 303 (per curiam); *Ruckman & Hansen, Inc. v. Contracting & Material Co.,* 7 Cir., 1964, 328 F.2d 744; *cf. Donovan v. Esso Shipping Co.,* 3 Cir., 1958, 259 F.2d 65, *cert. denied,* 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572.

■ An appeal which is enlarged as a matter of substance is a new appeal. *See Bach v. Coughlin,* ante. After 30 days from judgment a party can appeal only in accordance with the final paragraph of F.R.A.P. 4(a), viz., upon a showing of "excusable neglect," the establishment of which is jurisdictional. *Buckley v. United States,* 10 Cir., 1967, 382 F.2d 611, *cert. denied,* 390

U.S. 997, 88 S.Ct. 1202, 20 L.Ed.2d 97. Excusable neglect calls for "circumstances that are unique or extraordinary." *Maryland Cas. Co. v. Conner,* 10 Cir., 1967, 382 F.2d 13, 17. *See also* Stern, Changes in the Federal Appellate Rules, 41 F.R.D. 297, 299 ("emergency situations only"). If this includes a mere palpable mistake by experienced counsel, the requirement would be meaningless. We may add that, after the original appeal had been filed, the case remained in the district court only for procedures "in aid of the appeal." *See* Moore's Federal Practice, ¶ 203.11. We do not believe this includes passing on a motion to enlarge its substance. Finally, the rule makes no provision for plaintiff's contention that the defendant was not prejudiced. Such an exception would be limitless.

*Affirmed.*