PROWSWOOD, INC., et al., Plaintiffs
and Appellants,

v.

MOUNTAIN FUEL SUPPLY CO.,
Defendant and Respondent.

PROWSWOOD, INC., et al., Plaintiffs
and Respondents,

v.

MOUNTAIN FUEL SUPPLY CO.,
Defendant and Appellant.

No. 18404, 18511.

Supreme Court of Utah.

Jan. 6, 1984.

Bill Thomas Peters, Michael Z. Hayes, Salt Lake City, for plaintiffs and appellants.

Robert S. Campbell, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

These consolidated appeals arise out of an action commenced by Prowswood Corporation (hereinafter "Prowswood") against Mountain Fuel Supply Company (hereinafter "Mountain Fuel") for damages resulting from the alleged breach of an oral contract and the alleged negligent misrepresentation made in connection with the promotion and sale of gas air conditioning. Following a dismissal of the action with prejudice, Prowswood filed an appeal based on the following contentions: (1) the lower court's dismissal for failure to prosecute the action in the name of the real party in interest violated the purpose and language of Rule 17(a) of the Utah Rules of Civil Procedure; (2) incorporation of Prowswood's negligent misrepresentation cause of action in the final pretrial order precluded the dismissal of said claim on the first day of trial; (3) the lower court disregarded statutory procedural safeguards in dismissing Prowswood's tort claim on the basis of Mountain Fuel's motion in limine; (4) Mountain Fuel's circumvention of statutory procedural rules through improper implementation of the motion in limine had a prejudicial impact upon Prowswood; and (5) the lower court erroneously dismissed Prowswood's claim for negligent misrepresentation as not being a judicially recognized cause of action.

Mountain Fuel subsequently filed a response in the Prowswood appeal and in

addition filed a separate appeal from an order of the lower court granting Prowswood's motion for an extension of time to file its notice of appeal. As the basis for this appeal, Mountain Fuel contends that the timely payment of the docketing fee and filing fee is required to perfect an appeal and that failure to perfect an appeal due to mere inadvertence or oversight does not constitute excusable neglect.

The facts that precipitated Prowswood's cause of action and that pertain equally to both appeals are set forth immediately hereafter. Following this, the specific procedural facts giving rise to the Prowswood appeal and those giving rise to the Mountain Fuel appeal are stated separately.

Prowswood is a closely held corporation engaged in the development of real estate. It is presently owned by Richard Prows and Robert Wood and their families.[1] During the years 1969 through 1974, Messrs. Prows and Wood, serving in their official corporate capacities as president and vice-president respectively, were approached by sales representatives of Mountain Fuel with the prospect of installing gas air-conditioning units in their apartment projects. It is alleged by Prowswood that the sales representatives, particularly one Riley, made the following oral representations with respect to the gas air-conditioning proposal:

(A) The initial costs would be greater with gas air conditioning, but there would be no maintenance cost because Mountain Fuel would perpetually service and/or maintain all the units.

(B) Mountain Fuel would guarantee the air-conditioning units if they were installed according to the sizing recommendations and instructions furnished by Mountain Fuel.

(C) Mountain Fuel would maintain a complete parts inventory to provide for rapid replacement of parts for the units.

Prowswood further contends that it relied upon these representations when it

purchased gas air-conditioning equipment and installed such equipment in a large apartment complex known as Lake Pines Apartments.

According to the allegations of Prowswood's amended complaint, as well as Mr. Prows' testimony at trial, the air-conditioning units installed in the Lake Pines Apartments developed serious operational problems. When called upon to service the malfunctioning units, Mountain Fuel denied having made the alleged warranties and promises and ultimately refused to repair the units. Consequently, Prowswood brought this action against Mountain Fuel for breach of contract and negligent misrepresentation.

*Facts Pertinent to the Prowswood Appeal*

This action, although commenced on March 10, 1977, did not proceed to trial until January 20, 1982. Prior to the trial, a final pretrial order was prepared, approved as to form by both parties and filed pursuant to the court's order. The order sets forth Prowswood's claim for damages based on both breach of contract and negligent misrepresentation theories.

On January 19, 1982, the day before the scheduled trial, counsel for Mountain Fuel served upon counsel for Prowswood a motion in limine to dismiss plaintiff's fraud claim. On the next day, January 20, prior to commencement of the trial, counsel for Prowswood served upon opposing counsel a reply and objection to the motion in limine. Argument was then heard by the court on this motion (prior to trial), resulting in the dismissal of Prowswood's claim for negligent misrepresentation. The court concluded that although the allegations of the amended complaint were legally sufficient to state a cause of action for breach of contract, the allegations were insufficient to state a claim for misrepresentation.

After the jury was impaneled and during the presentation of Prowswood's case in chief, it was discovered through testimony given by Mr. Prows that the owner of the

---

1. The record indicates that Prowswood was formerly owned by Messrs. Prows and Wood and that their families became shareholders sometime after 1970.

Lake Pines Apartments at the time the alleged oral contract was entered into was a partnership entity known as Lake Pines Development Company (hereinafter "Lake Pines") and not Prowswood, the plaintiff in the action. Counsel for Mountain Fuel therefore made a motion to dismiss the case for failure to prosecute in the name of the real party in interest.[2] Argument on this motion was then heard outside the presence of the jury. Counsel for Prowswood, while conceding its mistake as to the legal ownership of the Lake Pines Apartments, offered to have the partnership (Lake Pines Development) ratify the action or be substituted therein pursuant to Rule 17(a) of the Utah Rules of Civil Procedure. Prowswood argued that the ownership composition of both Prowswood and Lake Pines is the same with the exception of the children of Messrs. Prows and Wood. It further argued that Prowswood Corporation was a managing entity with respect to the subject apartments and that in its managerial capacity it had entered into the oral agreement with Mountain Fuel for the benefit of the owner/principal, Lake Pines Development. Notwithstanding Prowswood's arguments, the court dismissed the action with prejudice, reasoning that a substitution or ratification of the action by Lake Pines would not solve or reconcile the factual dilemma of Prowswood's having privity of contract with Mountain Fuel but no damages and Lake Pines' having damages but no privity of contract.

*Facts Pertinent to the Mountain Fuel Appeal*

A final judgment in this matter, together with findings of fact and conclusions of law, was entered on March 18, 1982. A notice of appeal was then prepared by counsel for Prowswood and filed by way of a "runners" service on April 14, 1982.

On April 23, 1982, some five days after the expiration of the statutory thirty-day period for filing an appeal,[3] Prowswood received notice from the district court clerk's office that neither the filing fees nor the docketing fees had been received on the date the notice of appeal had been filed. Prowswood immediately filed an ex parte motion for an extension of time for filing notice of appeal, which motion was summarily granted, extending the time for completing the filing to April 28, 1982.

Counsel for Mountain Fuel became apprised of Prowswood's motion for extension on April 28, 1982. Thereafter, on May 7, 1982, Mountain Fuel filed a motion to set aside the order that extended the time for filing the notice of appeal. At the May 14 hearing on the motion, the court set aside the April 23 order on the basis of Prowswood's failure to give proper notice, which denied Mountain Fuel an opportunity to be heard. However, upon further hearing it was determined that Prowswood's inadvertent failure to accompany the notice of appeal with the requisite fees was excusable neglect, and the time for paying such fees was extended to May 17, 1982. From this order, Mountain Fuel appeals.

The focus of this appeal is upon two provisions of Rule 73(a) of the Utah Rules of Civil Procedure. These two provisions, as they appear in the text of said rule, are as follows:

(a) When an appeal is permitted from a district court to the Supreme Court, the time within which an appeal may be taken shall be one month from the date of the entry in the Register of Actions of the judgment or order appealed from unless a shorter time is provided by law, [1] *except that upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal* not exceeding one month from the expiration of the original time herein prescribed. Such an extension may be granted by the district court before or after the expiration of the original time herein prescribed; ....

. . . .

A party may appeal from a judgment by filing with the district court a notice of appeal, together with sufficient copies

---

**2.** Pursuant to Utah R.Civ.P. 17(a).

**3.** Utah R.Civ.P. 73(a).

thereof for mailing to the Supreme Court and all other parties to the judgment, [2] *and depositing therewith the fee required for docketing* the appeal in the Supreme Court. The clerk of the district court shall forthwith transmit one copy of the notice of appeal, showing the date of filing, together with the required fee, to the Supreme Court where the appeal shall be duly docketed. Failure of the appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this rule or, when no remedy is specified, for such action as the Supreme Court deems appropriate, which may include dismissal of the appeal. [Emphasis added.]

The first issue raised with regard to this rule is whether the provision requiring the payment of a docketing fee constitutes a jurisdictional requirement that, if not satisfied within "one month from the date of the entry ... of the judgment," would render an appeal invalid. We conclude that failure to pay the docketing fee within the requisite period is a defect of jurisdictional magnitude.

It is axiomatic in this jurisdiction that failure to timely perfect an appeal is a jurisdictional failure requiring dismissal of the appeal.[4] The plain, unambiguous language of Rule 73(a) requires two steps to perfect an appeal, both of which must be performed within the requisite thirty-day period: (1) a notice of appeal must be filed with the district court, and (2) a docketing fee must be deposited therewith. This interpretation draws support not only from the clear language of the statute itself, but also from judicial precedent in this jurisdiction, as well as many other jurisdictions.

This Court has had occasion to rule on the importance of the filing fee in several cases. In the case of *In Re Estate of Ratliff*,[5] the appellant sent his notice of appeal to the clerk's office within one month after the denial of his motion for a new trial. However, he did not pay the statutory filing fee until one week after the deadline had passed. Consequently, the clerk did not file the notice at the time it was received; rather, she filed it on the date the filing fees were paid. This Court ruled that it lacked jurisdiction to consider the appeal due to the appellant's failure to comply with the statutory filing requirements. In so holding, the Court quoted the following language from a former opinion, *Jacobsen v. Jeffries:*[6] "Leaving a paper with a filing officer, a fee for the filing of which is by the statute required to be paid in advance, is not a filing."[7]

The events that precipitated the Court's statement in *Jacobsen, supra,* and the further reasoning applied therein are also apropos to this issue. There, the appellant made arrangements with the clerk to have his notice of appeal filed and his filing fees paid later. Before the notice of appeal was filed, however, a new clerk took over and did not file the notice until the fees were received, which was after the period for filing had expired. This Court dismissed the appeal for lack of jurisdiction, reasoning, as stated above, that the delivery of a notice of appeal without the requisite filing fee does not constitute a filing. This rationale was based upon an earlier decision, *Gee v. Smith,*[8] involving the validity of the filing of a trial transcript with the Supreme Court without the requisite filing fee. The Court in that case articulated the following rule:

> Under our law the filing of the record consists of two acts, one of which is payment of the fee, and the other of which is delivering the record to the clerk. Neither act standing alone is a

---

4. *See Tracy v. University of Utah Hosp.*, Utah, 619 P.2d 340 (1980); *Watson v. Anderson*, 29 Utah 2d 36, 504 P.2d 1003 (1973); *Anderson v. Anderson*, 3 Utah 2d 277, 282 P.2d 845 (1955).

5. 19 Utah 2d 346, 431 P.2d 571 (1967).

6. 86 Utah 587, 47 P.2d 892, 893 (1935).

7. *Supra* n. 5, 431 P.2d at 573.

8. 52 Utah 602, 176 P. 620 (1918).

filing, or a half filing, or of any avail as a filing.[9]

We note that at the time the *Gee* and *Jacobsen* decisions were handed down, the rules of appellate procedure, particularly those respecting the payment of filing fees, were not precisely as they are now nor as they were at the time *Ratliff* was decided. Notwithstanding, however, the Court in *Ratliff* applied the same interpretation and analysis of the filing fee requirements as it had in *Gee* and *Jacobsen*. Inasmuch as those requirements are the same at present as they were at the time *Ratliff* was decided, we likewise consider the rule articulated in *Gee, supra,* and followed in *Jacobsen* and *Ratliff,* applicable here.

As a rejoinder to the principles stated in *Ratliff* and *Jacobsen,* Prowswood avers that those cases are distinguishable on their facts and therefore inapropos to the present issue. The major distinction pointed out by Prowswood is that the notice of appeal in *Ratliff* and *Jacobsen,* although timely delivered, was not filed by the clerk within the statutory period, while in the instant matter, the notice of appeal was not only delivered timely, but also filed by the clerk within the requisite period. Thus, Prowswood claims that the Court's statements in *Ratliff* and *Jacobsen* do not support the proposition urged by Mountain Fuel that the payment of the filing fees within the statutory period is necessary and jurisdictional; rather, they support the proposition that only the actual filing of the notice of appeal within said period is necessary and jurisdictional.

Although we concede that the factual distinction drawn by Prowswood exists, we do not countenance Prowswood's position that the scope of application of the rule stated in the *Ratliff* and *Jacobsen* decisions is limited by virtue of that distinction. The rule clearly articulates the consequence of failure to pay filing fees within the statutory period; it does not condition such consequence, as Prowswood suggests, upon the clerk's refusal or failure to actually file the notice of appeal. The rule states unequivocally that the delivery of the notice of appeal without the required filing fees is ineffectual.

In further justification of Prowswood's position that the payment of filing fees is not jurisdictional, it alleges that the legal duty to insure compliance with the filing fee requirement rests in the clerk of the court rather than in the parties themselves. This proposition is purportedly supported by both the *Jacobsen* and *Ratliff* decisions. However, we do not find such support in those cases. In *Ratliff,* the Court merely noted that the clerk's refusal to file the notice of appeal without the filing fee was proper inasmuch as U.C.A., 1953, § 21–2–2 requires the clerk to receive the proper filing fee *before* filing the notice of appeal.[10] The Court did not hold, nor did it even imply, that the clerk's duty under § 21–2–2 (or § 21–2–1) supersedes or vitiates or in any way lessens the party's responsibility to pay said fees pursuant to Rule 73(a). Similarly, in *Jacobsen* the Court recognized the clerk's responsibility with respect to filing fees and made the following hypothesized observation:

> Should such officers inadvertently or otherwise file a paper for which a fee is required to be paid, he is forthwith bound to account for such fee whether or not he collected the fee at the time the paper was left for filing.[11]

We do not interpret this observation, as Prowswood does, to mean that the inadvertent filing of the notice of appeal by the clerk without the appropriate filing fees validates or perfects the appeal. The statement was not intended to extend the clerk's accountability into the realm of the party's responsibility. Indeed, such an interpretation would run squarely against the rule of law laid out in that case, to wit: "[l]eaving

---

**9.** *Supra* n. 6, 47 P.2d at 893, quoting from *Gee v. Smith,* 52 Utah at 621, 176 P. 620.

**10.** To be more specific, the requirement that clerks collect fees in advance is found in § 21–2–1. Section 21–2–2 enumerates the fees to be collected by the county clerk.

**11.** *Supra* n. 6.

---

a paper with a filing officer, a fee for the filing of which is by the statute required to be paid in advance, is not a filing," *supra.*

Prowswood's argument with respect to the court clerk's duty goes a step further. It alleges that the clerk had an opportunity to discover the mistake (i.e., inadvertent filing of the notice of appeal without the fees) prior to the expiration of the thirty-day period and failed to do so inasmuch as counsel for Prowswood allegedly contacted the clerk the day after the notice of appeal had been delivered (which was approximately three days before the thirty-day deadline) and was assured by the clerk that the appeal had been filed. Prowswood complains that at that point in time, had the clerk recognized the error in filing the notice without fees or refused to file the notice without payment of said fees imposed by statute, Prowswood would have had time to pay the fees before the deadline, and no extension would have been necessary.

Again, this argument is an attempt to transfer the duty to perfect an appeal from the moving litigant (to whom the duty legally belongs) to the clerk of the court. That the clerk is not responsible for discovering and rectifying the procedural mistakes made by the litigants is illustrated in the case of *Gee v. Smith, supra.* There, the appellant sought to excuse his failure to timely remit filing fees by showing that the clerk of the district court had received a letter from the clerk of this Court indicating that the filing fees had not been received and that the transcript could not be filed until such fees were received, and that the clerk failed to communicate the contents of the letter to the appellant in time for him to pay the fees. The Court rejected this excuse, placing the burden of compliance with the procedural rules upon the moving litigant: "We must hold that appellant and his attorneys knew that the record would not be filed unless the filing fee was paid." [12] The Court went on to articulate the rule stated above respecting the consequence of failure to timely remit filing fees.

Consistent with the conclusion reached in *Gee* with respect to the clerk's responsibility are the pronouncements of the Missouri Supreme Court in a case involving almost identical circumstances as those present here. In *Keeney v. State,* [13] the court clerk improvidently filed a notice of appeal without having received the required filing fee of $20. The Missouri court held with respect to that improvident filing: "The filing of the notice of appeal by the circuit clerk was invalid and ineffective." [14]

■ Accordingly, we hold that Prowswood cannot have its inadvertence in failing to remit the requisite filing fee excused by reason of the court clerk's improvident filing of the notice of appeal without such fees.

A division of authority exists in other jurisdictions upon the question presently before us. The principal authority for the position urged by Prowswood, to wit: that the filing fee requirement is not jurisdictional, is a U.S. Supreme Court case entitled *Parissi v. Telechron, Inc.* [15] In that case, the petitioner failed to include with its notice of appeal the $5 filing fee required by the pertinent federal statute, [16] and the clerk consequently refused to file the notice. The time for filing the appeal then lapsed before the payment was made. The Court reversed the circuit court's dismissal, stating:

12. *Supra* n. 8, 176 P. at 621.

13. Mo., 556 S.W.2d 514 (1977).

14. *Id.* at 515. It is noted that Missouri also has a statute requiring the clerk to receive the filing fees in advance of filing the notice of appeal. Notwithstanding this statute, however, the court held as it did with respect to the improvident filing.

15. 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955).

16. The five-dollar filing fee requirement is found in 28 U.S.C. § 1917 and reads thus:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

We think that the clerk's receipt of the notice of appeal within the thirty (30) day period satisfied the requirement of Section 2107, and that untimely payment of the Section 1917 fee did not vitiate the validity of petitioner's notice of appeal.[17]

Yet another federal decision relied upon by Prowswood with respect to this issue is the case of *Gould v. Members of New Jersey Division of Water Policy & Supply.*[18] There, the Third Circuit Court of Appeals, on its own motion, raised the issue of an untimely fee payment and held, citing *Parissi:*

> It is thus clear that the filing fee requirement cannot operate to render untimely a notice of appeal that is timely received in the clerk's office.[19]

This Court accords considerable weight to decisions that interpret federal procedural rules identical or substantially similar to the procedural rules of this state. However, such similarity does not exist between the federal rules respecting filing fees and this state's Rule 73(a).

The language of Rule 73(a) differs from the federal rules at issue in *Parissi* and *Gould* (to wit: 28 U.S.C. §§ 1917 & 2107), as well as the more current Rule 3(a) of the Federal Rules of Appellate Procedure, in one important regard. Rule 73(a) sets forth the requirements of delivery of the notice of appeal and payment of the docketing fees within the statutory period and then continues:

> *Failure of the appellant to take any of the further steps* to secure the review of the judgment appealed from does not effect the validity of the appeal .... [Emphasis added.]

We believe the manifest intent of the underscored language is to make jurisdictional the two steps for securing the appeal which precede that language (i.e., filing the notice of appeal and paying the docketing fees). Only the steps which follow that language are nonjurisdictional.

The federal rules interpreted in *Parissi* and *Gould* do not include a provision such as that stated above, separating the jurisdictional requirements from the nonjurisdictional. Rule 3(a) of the Federal Rules of Appellate Procedure does, however, contain a similar provision. The Rule begins by stating the single requirement that a notice of appeal be filed with the clerk of the court; it does not also include at that point, as our Rule 73(a) does, the requirement that the filing fees be paid. It then continues:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal ....

In the Advisory Committee's notes on appellate rules, the following statement appears with respect to the importance of this provision in determining what is and what is not a jurisdictional requirement:

> *In view of the provision* in Rule 3(a) that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal," the case law indicates that the failure to prepay the statutory filing fee does not constitute a jurisdictional defect. See *Parissi v. Telechron,* 349 U.S. 46 [75 S.Ct. 577, 99 L.Ed. 867] (1955); *Gould v. Members of N.J. Division of Water Policy & Supply,* 555 F.2d 340 (3d Cir.1977). [Emphasis added.][20]

---

17. 349 U.S. at 47, 75 S.Ct. at 577.

18. 555 F.2d 340 (3d Cir.1977).

19. *Id.* at 341. Prowswood also cites the following cases from two state jurisdictions wherein the rule articulated in *Parissi* was followed: *City of Gainesville v. Thomas,* Fla., 229 So.2d 833

(1969); *Williams v. State,* Fla., 324 So.2d 74 (1975); *Kalauli v. Lum,* 57 Hawaii 168, 552 P.2d 355 (1976).

20. 28 U.S.C.A. Rule 3(a), Notes of Advisory Committee on Appellate Rules, note to subdivision (c).

This Court does not stand alone in its conclusion that filing fees rise to the level of jurisdictional magnitude. Under circumstances similar to those before us, other state courts have articulated the same conclusion. The Washington State Supreme Court has held:

> The timely filing of a proper written notice of appeal and the timely payment of the required filing fee are jurisdictional prerequisites in the appeal of all civil cases....[21]

The Supreme Court of the state of Missouri has held:

> This notice of appeal was not timely filed because the docket fee, without which the notice of appeal is ineffective, was not deposited ...; therefore we do not have jurisdiction of the appeal.[22]

And the Nebraska Supreme Court has observed:

> The Supreme Court has no power to exercise appellate jurisdiction ... unless the appellant shall have filed a notice of appeal and deposited a docket fee ... within the time fixed ....[23]

In light of the foregoing, we conclude that the timely payment of a filing fee, like the timely delivery of a notice of appeal, is a jurisdictional prerequisite to the perfection of an appeal before this Court.

We turn now to the final issue raised in connection with Rule 73(a). This issue arises out of the following provision of the Rule: "except that upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal ...." By virtue of this provision, notwithstanding the jurisdictional nature of the filing fee requirement, if the appellant can show that its failure to timely pay said fees was due to "excusable neglect," the time for paying the fees and perfecting the appeal may be extended. The pivotal issue is, therefore, whether the district court abused its discretion in determining that the excuse offered by Prowswood for its failure to timely remit the fees constitutes "excusable neglect."

The excuse proffered by Prowswood at the hearing on May 14, 1982, for the failure to pay the docketing fee was that counsel for Prowswood was involved in "another matter" on the day of the attempted filing and "inadvertently" failed to include a check for the fees with the notice of appeal, which was sent through a runner service. Counsel further informed the Court that he telephoned the district court the next day (which was three days prior to the expiration of the thirty-day deadline) and was assured by an unidentified deputy clerk that the appeal was filed.

When the question of "excusable neglect" arises in a jurisdictional context (e.g., Utah R.Civ.P. 73(a)), as opposed to a nonjurisdictional context (e.g., Utah R.Civ.P. 60(b)), the standard contemplated thereby is necessarily a strict one.[24] This strict standard was recognized and explained relative to the parallel federal rule (i.e., Federal Appellate Rule 4(a)) as follows:

> The Committee intended that the standard of excusable neglect remain a strict one, however. *We did not want lawyers to be taking advantage of this extra thirty (30) days as a matter of course; it is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case.* It is hoped that the bar will invoke and the courts give effect

**21.** *Myers v. Harris,* 82 Wash.2d 152, 509 P.2d 656, 657 (1973).

**22.** *State v. Brookshire,* Mo., 400 S.W.2d 61 (1966). *See also Kattering v. Franz,* 360 Mo. 854, 231 S.W.2d 148 (1950); *Keeney v. State, supra* n. 13.

**23.** *American Legion Leo Brinda Post No. 90 v. Nebraska Liquor Control Comm'n,* 199 Neb. 429, 259 N.W.2d 36 (1977).

**24.** *Varnum v. Grady,* 90 Nev. 374, 528 P.2d 1027 (1974); *Feltch v. General Rental Co.,* 383 Mass. 603, 421 N.E.2d 67, 73 (1981); *State of Or. v. Champion Intern. Corp.,* 680 F.2d 1300 (9th Cir. 1982); *Selph v. Council of City of Los Angeles,* 593 F.2d 881 (9th Cir.1979) (quoting Advisory Committee Notes to 1966 amendment to Fed.R. Civ.P. 73, the predecessor of Fed.R.App.P. 4(a)).

to this less stringent standard in the spirit in which it was written—*that is to take care of emergency situations only.* [Emphasis added.] [25]

Similarly, the Tenth Circuit Court of Appeals, in the case of *Maryland Casualty Company v. Conner*, stated that the rule was not intended to permit an extension "in the absence of circumstances that are unique or extraordinary." [26] Inadvertence or mistake of counsel does not constitute the type of unique or extraordinary circumstances contemplated by this strict standard. [27]

The application of this rule is well illustrated in the following cases. In *Feltch v. General Rental Co.,* [28] appellants sought to excuse the untimely filing of their notice of appeal on the basis of a mistake they had made in interpreting a rule of appellate procedure. In rejecting this excuse, the court noted the strict construction given the "excusable neglect" concept in federal forums, *supra,* and held:

A flat mistake of counsel about the meaning of a statute or rule may not justify relief: *relief is not extended "to cover any kind of garden variety oversight."* [29] [Emphasis added.]

In the case of *Maryland Casualty Company v. Conner, supra,* the notice of appeal was filed late because the senior partner responsible for the litigation passed away suddenly, and another partner, who was unfamiliar with the litigation and absent from the office, was required to take over the litigation. In the motion for extension, counsel referred to the volume of matters he had inherited as a result of his partner's death, indicating that through inadvertence and preoccupation with other matters, he neglected to file the notice within the statutory period. The Tenth Circuit held that counsel's involvement in other matters did not show excusable neglect within the meaning of the rule.

In *Selph v. Council of City of Los Angeles,* [30] the excuse given for the late filing was that counsel had been preoccupied with a change of employment and had been unusually busy. The court rejected his excuse and dismissed the appeal.

Counsel for Prowswood have openly admitted that the failure to timely remit the filing fees was due to their own neglect and inadvertence occasioned by the press of business. Notwithstanding, they claim their neglect was excusable simply because they received assurances over the telephone from an unidentified deputy court clerk that the appeal had been filed and because Mountain Fuel was not prejudiced by the untimeliness of the payment of filing fees.

The assertion that prejudice or the lack thereof has a bearing upon the determination of the excusable neglect question is erroneous. This point is well illustrated in the case of *United States v. Commonwealth of Virginia,* [31] where the appellant attempted, as does Prowswood here, to shift the focus from "excusable neglect" to "injustice." The court rejected appellant's position upon the following reasoning:

It is always just that one should have an appeal from a trial court and it would seem that it would always be an injustice to deny such an appeal merely because

25. R. Stern, Changes in the Federal Appellate Rules, 41 F.R.D. 297, 299.

26. 382 F.2d 13, 16–17 (10th Cir.1967). *See also United States v. Kallevig,* 534 F.2d 411 (1st Cir. 1976).

27. 9 Moore's Federal Practice ¶ 204.13 at 4–97 to 4–98; *Sprout v. Farmers Insurance Exchange,* 681 F.2d 587 (9th Cir.1982).

28. *Supra* n. 24.

29. *Id.* at 74 (quoting from *Goldstein v. Barron,* 382 Mass. 181, 414 N.E.2d 998 (1980)).

30. *Supra* n. 24.

31. 508 F.Supp. 187 (E.D.Va.1981). *See also Spound v. Mohasco Industries, Inc.,* 534 F.2d 404 (1st Cir.1976), where the appellant made the same argument advanced by Prowswood. It was summarily rejected, the court declaring that the "rule makes no provision for plaintiff's contention that the defendant was not prejudiced. Such an exception would be limitless." *Id.* at 411.

of the inadvertent missing of an arbitrarily drawn deadline.... Surely what is just on the 30th day does not become unjust on the 31st merely because the 31st day has come. Thus, if the justice or injustice of the question is to be the basis for granting or denying a motion for an extension, the Court should not look to the acts or omissions of appellant but, instead, to any prejudice that might accrue to appellee from a granting of the extension. *This is clearly and explicitly not what the rule requires. The rule requires that the conduct of the appellant only be looked to and that only if excusable neglect be shown on appellant's part should an extension be granted.* [Emphasis added.][32]

As to the excuse that the clerk's assurances over the telephone misled counsel for Prowswood and thus justified counsel's late payment of the fee, it is again to be observed that the clerk of the court is not responsible for discovering and rectifying procedural errors committed in the first instance by the litigants. The dissent's position on this particular question is contradictory. It agrees that the payment of the filing fee is the responsibility of the appellant alone and is in no way that of the court clerk. It then, however, shifts that responsibility, or at least part thereof, to the court clerk by suggesting that the clerk's failure to mention the appellant's omission of the filing fee is a factor in determining the excusability of appellant's neglect. We note that the oversight and inadvertence of counsel in this case preceded and occurred wholly independently of the purported error of the deputy court clerk. This excuse did not support Prowswood's argument, *supra*, with respect to the nature of the filing fee requirement, and it likewise does not support Prowswood's argument regarding "excusable neglect."

■ We hold that the district court abused its discretion in finding the inadvertent mistake of counsel to be "excusable neglect" within the recognized meaning of

that term. Our resolution of this appeal makes it unnecessary to address the merits of the issues set forth in the Prowswood appeal.

The appeal of Prowswood is dismissed for lack of jurisdiction.

STEWART and DURHAM, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur with the conclusion of the majority opinion that the timely payment of the filing fee is a jurisdictional prerequisite to the perfection of an appeal before this Court. However, I dissent from the conclusion of the majority that the district court abused its discretion in finding the neglect of counsel in this case to be "excusable" within the meaning of Rule 73(a), and therefore that Prowswood was not entitled to an extension of time to perfect its appeal.

The majority opinion states that "the standard contemplated by the term 'excusable neglect' is universally considered to be a very strict one." The only cases which support that statement, however, are cases from federal courts. The term "excusable neglect" appears not only in our rules in Rule 73(a), but also in Rule 60(b) providing for the setting aside of judgments (usually default judgments) obtained when a party or his counsel has been guilty of "excusable neglect." In interpreting Rule 60(b) we have given the district courts wide discretion in determining what constitutes "excusable neglect," and only in rare cases have we overruled their decisions that have set aside default judgments after finding "excusable neglect." *Warren v. Dixon Ranch*, 123 Utah 416, 260 P.2d 741 (1953). I see no reason why the same broad interpretation should not apply to the meaning of "excusable neglect" as used in Rule 73(a).

The majority opinion states "inadvertence or mistake of counsel does not constitute the type of unique or extraordinary

**32.** *United States v. Commonwealth of Virginia,* *supra* n. 31, at 192.

circumstances contemplated by this strict standard." That statement imposes a much higher test than we have heretofore required under Rule 60(b). Under the latter rule we have required only *reasonable* justification or excuse for the defendant's failure to appear. *Mayhew v. Standard Gilsonite Co.*, 14 Utah 2d 52, 376 P.2d 951 (1962). See also *Westinghouse Electric Supply Co. v. Larsen Contractor Inc.*, Utah, 544 P.2d 876 (1975), where we said only a *reasonable* excuse need be shown to merit the vacating of a default judgment.

I agree that the payment of the filing fee so that the appeal is properly "filed" is the responsibility of the appellant. However, I think that the trial court, in determining whether the neglect of counsel for Prowswood was excusable, might well consider the fact that the clerk accepted the filing of the notice of appeal without mentioning the omission of the necessary fee. This silence itself is very unusual[1] and compounded the neglect of counsel. That fact, coupled with the fact that counsel later called the clerk's office and received assurance that the notice of appeal had been filed with no mention being made of the lack of the filing fee, would seem to me to give a basis in reason for concluding that the neglect of counsel was excusable. I have no quarrel with the committee note to Federal Appellate Rule 4(a) to the effect that the committee did not want lawyers to be taking advantage of the extra thirty days as a matter of course, and that it was not meant to cover the usual excuse that the lawyer is too busy. That is not the instant case. Here, counsel for the appellant was not too busy. He filed his notice of appeal well ahead of the original one-month deadline. By oversight he neglected to pay the fee, which ordinarily would be detected by the clerk of the court. Counsel used further diligence in checking with the court to make sure that the appeal was filed and he received that assurance. The diligence, care and effort expended by the appellant in attempting to properly file its appeal bears on whether its neglect of one step should be excused.

I would not disturb the district court's determination that counsel's neglect was excusable.

OAKS, J., concurs in the concurring and dissenting opinion of HOWE, J.

---

1. U.C.A., 1953, § 21-2-1 requires county officers to collect fees in advance for the use and benefit of the county.