## WEST et al. v. BANK OF COMMERCE & TRUSTS et al.

### No. 5724.

Circuit Court of Appeals, Fourth Circuit.

April 26, 1948.

Henry R. Miller, Jr., Asst. City Atty., of Richmond, Va. (J. Elliott Drinard, City Atty., of Richmond, Va., on the brief), for appellant City of Richmond.

R. Hugh Rudd, of Richmond, Va., for appellants Alice M. West and others.

Ralph T. Catterall and John J. Wicker, Jr., both of Richmond, Va. (Guy B. Hazelgrove, of Richmond, Va., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The owners of a lot of ground, located at the northeast corner of Chamberlayne Avenue and Lancaster Road in the City of Richmond at the dividing line between business and resident zones laid out by the municipal authorities, are endeavoring on

this appeal to sustain a judgment of the District Court which permits the erection of a gasoline filling station on the southern half of the property, and the city and the owners of adjacent properties oppose the judgment on the ground that the maintenance of such a business would be a violation of a zoning ordinance of the city which is now in effect.

Upon an earlier appeal, West v. Bank of Commerce & Trusts, 4 Cir., 153 F.2d 566, we reversed a judgment in favor of the property owners on the ground that the controversy was moot. At that time we considered the effect of a declaratory judgment of the District Court entered on October 4, 1945, which stated the intent and meaning of a prior judgment of the District Court entered on February 19, 1942. The latter judgment was entered as the result of a compromise between attorneys representing the owners of the lot and attorneys representing the city, upon a stipulation of facts which declared that although a city ordinance passed in 1927 limited the use of the lot to residence purposes, the neighborhood had since changed to such an extent that the application of the ordinance to the southern half of the property did not tend to promote the public health, safety, morals, or general welfare of the community. Accordingly, the court declared that the application of the ordinance to the southern half of the lot was an unconstitutional exercise of the police power and enjoined the city from enforcing the ordinance insofar as it denied the owners the right to use the southern half of the lot in such manner as was permissible in a B-1 business district. The effect of the injunction was to move the boundary line between residence and business districts from Lancaster Road to the middle of the lot.

The owners were thus at liberty to proceed with the project but the war intervened and rendered it impracticable; and on May 19, 1943, before any action could be taken, a new zoning ordinance was passed which in some respects enlarged the uses to which property might be put in residence districts and restricted the uses to which it might be put in business districts. The lot in controversy was, however, retained in the residence zone. Nothing further was done until the end of the war was in sight and then on April 25, 1945 suit was brought for a judgment declaring that the judgment of February 19, 1942 was binding on the city and hence the owners were entitled to proceed with their project notwithstanding the passage of the ordinance of 1943. In this suit forty-eight owners of residential property in the neighborhood were allowed to intervene as parties defendant. After consideration of the matter, and without the taking of evidence, the court entered a declaratory judgment as prayed by the owners.

We reversed the judgment on the ground that the case presented only an abstract question and not an actual controversy calling for judicial decision, since the plaintiffs had failed to show a definite intention to use the lot at that time for any purpose forbidden by the ordinance, but, on the contrary, had admitted that it was not feasible on account of the war and might not be possible for years to come to erect a filling station on the lot.

That difficulty has since been removed and the controversy was renewed on April 11, 1946, when the property owners filed a petition or motion in the same case wherein they prayed the court to enjoin the city from enforcing the ordinance of 1943 in such a manner as to prevent the erection of a filling station on the lot. In the proceedings which followed, it was shown that the owners had sold the northern half of the lot for $5500 and had contracted to sell the southern half of the lot for $25,000 to an oil company on condition that a permit to use the premises for a filling station could be obtained; and it was further shown that the plaintiffs had applied to the Commissioner of Buildings of the City of Richmond for a building permit for such a station, but had been refused. Both sides offered evidence bearing upon the question whether the zoning of the lot for residence purposes was an arbitrary and unreasonable exercise of power in violation of the 14th Amendment. Witnesses for the plaintiffs, who were familiar with real estate in the city, testified that

the property was useful only for business purposes, while witnesses produced by the city and the adjacent property owners who were familiar with the public works of the city and the purposes of the Planning Commission and zoning authorities of the city testified that the property was on the dividing line between business and residential neighborhoods, and that it was in the interest of the community to prohibit the maintenance of business properties north of that line. The District Judge did not determine whether the evidence required the conclusion that there was no reasonable ground for the classification of the lot in question for residential purposes; but he held that the plaintiffs were entitled to a permanent injunction against the city prohibiting the enforcement of the restrictions as to the southern half of the lot because the attorneys for the city had authority under the city charter to enter into the stipulation of facts and to consent to the decree of February 19, 1942. That decree, he held, was res judicata, binding both on the city and the intervenors, and he therefore decreed that the city should be perpetually enjoined from enforcing against the owners and their successors in title any zoning ordinance of the city so as to prevent them from using the southern half of the lot in such manner as was permitted in a B-1 business district under the ordinance of 1927, which included its use as a gasoline filling station site.

■ We are satisfied that the attorneys for the city had no authority to compromise the original controversy by consenting to a decree which declared the ordinance of 1927 to be unconstitutional, and which perpetually enjoined its enforcement insofar as it restricted the lot in controversy to residential purposes. The ordinary rule is that an attorney at law has no authority, without his client's permission, to compromise his client's claim and this rule seems to apply to attorneys for municipalities as well as to attorneys for private individuals. Harris v. Diamond Const. Co., 184 Va. 711, 721, 36 S.E.2d 573; Louisville v. Louisville Ry. Co., 23 Ky.Law Rep. 390, 63 S.W. 14, 19; Frankfort v. Waldo Lumber Co., 128 Me. 1, 145

A. 241; Hutton v. Ingram, 255 Ill.App. 97; Stone v. Bank of Commerce, 174 U.S. 412, 19 S.Ct. 747, 43 L.Ed. 1028; Christy v. Atchison, T. & S. F. R. Co. 8 Cir., 233 F. 255; McQuillin on Municipal Corporations, 2d Ed., Vol. 2, p. 109. The charter of the City of Richmond, § 31, entrusts the management, charge and control of all of the law business of the corporation to the City Attorney; and according to the testimony, he customarily exercises the power to compromise law suits in which the city is interested, particularly in damage suits and small claims against the municipality. Whether the charter powers are sufficiently specific to authorize settlements of the latter kind, we do not find it necessary to decide, but we do not hestitate to say that the statutory language cannot be interpreted so as to empower the attorney to consent to a decree which perpetually forbids the legislative branch of the city government from exercising its powers in respect to the property in suit.

■ The District Court, when called upon in the first instance to exercise its discretion with respect to the granting of the injunction against the city, might well have refused to accept as true the stipulation that there was no valid ground for including the lot in the residential zone under the ordinance because this stipulation was one of law rather than of fact. It is generally held that parties may not stipulate the invalidity of statutes or ordinances, and that courts are required to disregard such stipulations since matters of public interest transcending the rights of the litigants are involved. North Platte Lodge v. Board of Equalization, 125 Neb. 841, 252 N.W. 313, 92 A.L.R. 658; People ex rel. Wray v. Grant, 48 Colo. 156, 111 P. 69; Tuttle v. Pockert, 147 Iowa 41, 125 N.W. 841; Attorney General v. Rice, 64 Mich. 385, 31 N.W. 203; Happel v. Brethauer, 70 Ill. 166, 22 Am.Rep. 70; Legg v. Annapolis, 42 Md. 203. See Chicago & G. T. R. Co. v. Wellman, 143 U.S. 339, 12 S.Ct. 400, 36 L.Ed. 176; E. Fougera v. City of New York, 224 N.Y. 269, 278, 279, 120 N.E. 642, 1 A.L.R. 1467; People v. Herrin, 284 Ill. 368, 120 N.E. 274. For these reasons the decree was not binding

upon the city and could have been vacated or set aside on application by it; United States v. Beebe, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563; Dalton v. West End St. R. Co., 159 Mass. 221, 34 N.E. 261, 38 Am.St. Rep. 410; Senn v. Joseph, 106 Ala. 454, 17 So. 543; Morgan v. Hood, 211 N.C. 91, 189 S.E. 115; Dwight v. Hazlett, 107 W.Va. 192, 147 S.E. 877, 66 A.L.R. 102; and certainly the decree cannot be regarded as res judicata in a subsequent suit to enforce it. Kelley v. Town of Milan, 127 U.S. 139, 8 S.Ct. 1101, 32 L.Ed. 77.

There is the weighty additional circumstance in the instant case that the decree was designed to be perpetual in its effect so as to deprive the city of its power to forbid the use of the property for business purposes in such manner as was permitted in a B-1 business district under the 1927 ordinance. The impairment of the city's power by that injunction, if given effect, is seen in the pending case. In 1943 the city undertook to investigate its whole zoning plan and to work out a comprehensive new system, and after its investigation, it decided, through its legislative body, as it had in 1927, that the property in question should be retained within the limits of the residential zone. It is contended that this action should now be disregarded since there has been no change in the local conditions since the decree of 1942; but this argument again reverts to the faulty view that the City Attorney had power to bind the City Council in its legislative action. Indeed, the City Council itself had no power in 1927 to bind successive Councils in the exercise of the power conferred upon them by the city charter; and the validity of subsequent action of the Council would not depend upon whether changes in local conditions had taken place in the interim, but whether, having regard to the state of facts at the time of the passage of the later ordinance, it could be said that it was without any rational basis. Especially must this be true when the mind of the legislature, in considering the establishment of a zoning system, is directed to the question where to draw the line between a residence and a business district, as in this case where the inquiry is whether the line should be drawn at a road or parallel thereto at a point 150 feet to the north. Obviously the line must be drawn somewhere and in the nature of things, somewhat arbitrarily; but it must be drawn by the body which is clothed with authority to exercise the police power of the state and not by the courts which may not interfere so long as any reasonable ground for the legislative decision can be discerned. See Carolene Products Co. v. United States, 323 U.S. 18, 65 S.Ct. 1, 155 A.L.R. 1371, 89 L.Ed. 15; Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842; West Bros. Brick Co. v. Alexandria, 169 Va. 271, 192 S.E. 881.

The court below did not pass upon the constitutionality of the ordinance of 1943 and we do not undertake to decide it now, but merely reverse the judgment below and remand the case for such further proceedings as the parties may desire to take. We hold only that the ordinance of 1943 must be given effect unless it shall be found to be invalid and that the question of invalidity should not be considered by the District Court until the property owners may have exhausted such administrative remedies as may be available to them. See Bassett on Zoning, 2d Ed., pp. 128, 162, 163; People v. Calvar Corporation, 286 N.Y. 419, 36 N.E.2d 644, 136 A.L.R. 1376 and note; Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Deynzer v. City of Evanston, 319 Ill. 226, 149 N.E. 790. We do not undertake to decide whether the administrative remedies afforded the owners are adequate with respect to the specific relief sought by them, but the question should be considered in the District Court in the event that the owners desire to litigate the constitutionality of the 1943 ordinance without reference to the prior decree.

Reversed and remanded.