803 F.2d 713
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wille C. JONES, Appellant,
v.
CITY OF RICHMOND, a Municipal corporation of the
Commonwealth of Virginia; Beryl T. Carter, Individually and
in her official capacity as Director of Personnel for the
City of Richmond; Frank Duling, Individually and in his
official capacity as Chief of Police for the City of
Richmond; Jack W. Fulton, Individually and in his official
capacity as Director of Public Safety, Appellees.
 No. 85-2242(L).
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1986.
Decided Oct. 3, 1986.
 
 Sa'ad El-Amin (Sa-ad El-Amin & Associates on brief), for appellant.
 Michael L. Sarahan, Assistant City Attorney (William Joe Hoppe, Senior Assistant City Attorney; Michael K. Jackson, Assistant City Attorney on brief), for appellees.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This civil rights action was dismissed on the basis of the res judicata effect of the final judgment in an earlier action in which the same claims were asserted. The only thing before us is the propriety of the dismissal of the second action on the basis of the earlier judgment.
 
 
 2
 We affirm that dismissal.
 
 
 3
 In December 1983 Jones, a black man, was a lieutenant in the Richmond, Virginia, police department. He brought his first civil rights action in 1984, claiming racial discrimination against him when he was not promoted to captain effective December 31, 1983.
 
 
 4
 Thereafter, in July 1984, the Richmond Personnel Board issued a decision in which it found that Jones, indeed, had been the victim of racial discrimination. It ordered the Director of Public Safety to promote Jones to captain, with back pay from December 31, 1983. Beryl Carter, Richmond's director of personnel, however, refused to promote Jones at that time.
 
 
 5
 A few months later, Jones was promoted to captain, effective as of November 24, 1984.
 
 
 6
 On December 21, 1984, there was a status conference in the judge's chambers. Jones had filed a petition for a writ of mandamus in the state court to compel Carter to comply with the order of the Richmond Personnel Board. Apparently, reasoning that there was no need to go to the expense of a trial of the federal civil rights action when he could obtain all the relief to which he was entitled in the state court mandamus action, the plaintiff's lawyer agreed to a dismissal of the federal civil rights action without prejudice to the plaintiff's right to prosecute the state court mandamus action.
 
 
 7
 Later that same day, the district judge entered an order referring to the settlement agreement and dismissing the civil rights action without prejudice to prosecution of the pending state court mandamus action. A copy of the order was mailed to the plaintiff's lawyer.
 
 
 8
 While there is some dispute as to just when the plaintiff's lawyer received a copy of the written order of dismissal, it is undisputed that he made no effort to appeal it.
 
 
 9
 He did not receive a written version of the settlement agreement until January 14, 1985. He presented that to his client on January 22, recommending that the client sign it, but Jones refused to do so. The lawyer informed the city attorney of his client's rejection of the settlement on January 23.
 
 
 10
 Instead of seeking relief from the December 21, 1984 judgment, Jones filed a second civil rights action on February 25, 1985, seeking the same relief he had sought in the first action. It was not until April 29, 1985 when, facing a claim of preclusion by the first judgment, Jones sought relief from that judgment by motion under F.R.Civ.P. 60(b). The lawyer stated that he had had no expressed authority from Jones to settle the first civil rights action, and that Jones had rejected the settlement proposal.
 
 
 11
 The district judge denied the Rule 60 (b) motion on the ground that it was untimely, finding no explanation for the delay from January until April in filing it.
 
 
 12
 There was no appeal from the order denying the Rule 60 (b) motion.
 
 
 13
 The motion to dismiss on res judicata grounds was granted in part and denied in part by the district judge. The district judge stated that a copy of the settlement agreement was not in the record, and he was unwilling to rely upon his recollection of what had been said on December 21, 1984 to determine the scope of the agreement.
 
 
 14
 Thereafter, a renewed motion for summary judgment was heard before a different district judge on October 28, 1985. The plaintiff's lawyer argued that there had been no settlement of the first civil rights action and that dismissal of that action based upon the unconsummated agreement of counsel was erroneous. The second district judge, observing that the December 21, 1984 judgment had already been partially enforced by the first district judge, concluded that the validity of the December 21, 1984 judgment was not properly before him. He concluded that the 1984 judgment precluded maintenance of the second civil rights action in which the same claims were asserted.
 
 
 15
 The first district judge acted precipitously in dismissing the first civil rights action on December 21, 1984, and his haste to get the case off the docket was a substantial contributing cause of the tangle that later developed. Nevertheless, the tangle would not have developed, or it could have been easily unraveled, if the first district judge had been promptly informed that the settlement agreement was not final or, later, if the plaintiff's lawyer had informed him that he had no expressed authority to enter into the settlement agreement and that the agreement had been affirmatively rejected by his client. If relief from the judgment had been sought within a reason able time after January 22, 1985, the judge could have held a hearing to determine the lawyer's authority to settle the case. See Wood v. Virginia Hauling Co., 528 F.2d 423, 425 (4th Cir.1975); West v. Bank of Commerce & Trusts, 167 F.2d 664, 666 (4th Cir.1948) ; United States v. Texas, 523 F. Supp. 703, 711 (E.D.Tex.1981). There is little doubt that he would have found that the lawyer had no authority to enter into a binding verbal settlement agreement and would have granted relief from the judgment. The trouble is that nothing was done to inform the district judge of the problem until April 29, 1985.
 
 
 16
 Dismissal of the Rule 60(b) motion as untimely was probably well within the discretion of the district judge, but that iS not a question which we may consider, for there was no appeal from the order denying that motion.
 
 
 17
 When the motion to dismiss the second action came before the second district judge in late October 1985, the December 21, 1984 judgment was clearly final. In late April, the first district judge refused to vacate it, and later had partially enforced it. There had been no appeal from the judgment or from the order denying the Rule 60(b) motion. The second district judge properly concluded that he had no authority to go behind the judgment and consider the lawyer's settlement authority. Settled principles required that he accept the judgment on its face and give it appropriate preclusive effect.
 
 
 18
 We are in the same position. The validity of the judgment of December 21, 1984 is not before us; nor is the appropriateness of the denial of the Rule 60(b) motion before us, for there have been no appeals.
 
 
 19
 Under these circumstances, the second district judge was quite correct in concluding that maintenance of the second civil rights action was precluded by the final judgment in the first.
 
 
 20
 AFFIRMED.