807 F.2d 285
 55 USLW 2357
 NATIONAL REVENUE CORPORATION, Plaintiff, Appellant,
v.
Arlene VIOLET, Attorney General of the State of Rhode
Island, Defendant, Appellee.
 No. 86-1422.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 9, 1986.
Decided Dec. 18, 1986.
 
 William C. Hillman with whom Strauss, Factor, Hillman & Lopes, P.C. was on brief for plaintiff, appellant.
 Basil J. Mezines, John A. Pirko and Stein, Mitchell & Mezines on brief for American Collectors Ass'n, amicus curiae.
 Richard P. Woolley, Sp. Asst. Atty. Gen., with whom Arlene Violet, Atty. Gen., was on brief for defendant, appellee.
 Daniel J. Murray, Robert D. Fine and Licht & Semonoff on brief for Rhode Island Bar Ass'n, amicus curiae.
 Before TORRUELLA, Circuit Judge, WISDOM* and ALDRICH, Senior Circuit Judges.
 BAILEY ALDRICH, Senior Circuit Judge.
 
 
 1
 Before addressing the questions in this case, all of which are of a strictly legal nature, we state an overview. Plaintiff, National Revenue Corp., is an Ohio corporation engaged nation-wide in the debt-collection business. In late 1980 it inquired as to the steps necessary to operate in Rhode Island and was informed by the state banking commissioner that because a Rhode Island statute, G.L. c. 11-27, defined debt collecting as the practice of law, plaintiff, as a non-member of the Rhode Island bar, was foreclosed. Plaintiff brought an action in the district court seeking a declaratory judgment that the statute was unconstitutional, inter alia, as an imposition on interstate commerce, and asking for an injunction. On July 20, 1982, with the consent of the special assistant attorney general attending, the court entered a judgment declaring the statute invalid, adding the words, "by agreement of the parties."[1] Plaintiff, having, since, extensively engaged in business in Rhode Island, is now faced with the district court's reversal of that judgment on the motion of the attorney general. It contends that the motion was procedurally improper, and that the initial judgment was substantively correct in any event. We agree with this last, but disagree with everything else that took place. Before we reach our final ruling, we review these earlier steps.
 
 
 2
 The first, possible, mistake was in the entry of the original judgment. Local Rules 22(a) and 22(b) require that stipulations and settlement agreements, respectively, be in writing, signed by counsel. The court accepted the oral assent of the assistant attorney general. This possibly was a procedural error. Alternatively, rather than an oversight, it may have been a conscious, and permissible, determination that Rule 22 was inapplicable. If not, we at least think it unduly harsh for the district court to have found, post, that plaintiff was on notice that the court's signature, in the presence of both counsel, was an empty act, and that plaintiff has itself to thank for relying on it.
 
 
 3
 In June 1983 the Rhode Island Supreme Court, having learned of this judgment, suggested to the attorney general that he consider filing a motion to have the federal court vacate the judgment and rule on the merits. A mistake followed. The attorney general's motion to vacate, filed under F.R.Civ.P. 60(b)[2] on July 20, 1983, asserted the wrong grounds. The motion was filed under subsections (1) and (6).[3] The subsection (1) "[m]istake, inadvertence, surprise, or excusable neglect" asserted by a special assistant attorney general was that, although the attorney general was aware of the discussions about a proposed consent judgment, there was no record indicating his approval. This was an important case. "[A] judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof by the party seeking to vacate the judgment that the attorney had no right to consent to its entry." Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136, 139 (10th Cir.1966). In spite of the absence of a writing it would be difficult to believe, without confirmation by the attorney general himself, that he was so lax as to have given no thought to the proposal, or to what happened to it. If that did occur, it might, indeed, be called "unique and extraordinary," cf. Spound v. Mohasco Industries, Inc., 534 F.2d 404, 411 (1st Cir.1976), cert. denied, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167, but not in the excusable sense. Given the importance of a judgment's finality, there is a substantial duty of attention. See id.; cf. Airline Pilots v. Executive Airlines, 569 F.2d 1174 (1st Cir.1978).
 
 
 4
 The magistrate himself, however, committed a mistake when he entered an order denying the motion. As the district court pointed out, this order was beyond his authority. The court, properly, treated the magistrate's action as a recommendation, to be reviewed de novo, and on consideration it rejected the recommendation and granted the motion. It did so, however, sua sponte, on a different ground, namely, the asserted violation of Local Rule 22. This, too, was a mistake.
 
 
 5
 While we agree that the district court has broad discretion, the invocation of this rule was an abuse. If Rule 22 was in fact applicable, not only does Rule 22(a) itself recognize an exception to prevent injustice, but Local Rule 2 provides for exceptions for all rules if their application in the particular case would be "unjust." As the court itself pointed out, the purpose of Rule 22 is to avoid having to resolve disputes as to whether counsel had agreed, or as to what they had agreed to. There was no such dispute here; the court's statement that the rule was "intended to prevent the kind of bickering present in this action" was misplaced. The only disputed claim was that the special assistant attorney general had not been given authority to agree, a Rule 60(b) matter, which, we have said, was not established. Hence we are concerned only with form; if the special assistant had signed instead of giving an oral assent, Rule 22 would not have been in the case.
 
 
 6
 As to injustice, as a result of this judgment plaintiff had been licensed, and had been carrying on business for over a year. Talking counsel's signature at this point, when the court itself had accepted oral consent, is a clear case of elevating form over substance, and we reject it.
 
 
 7
 Moving on, the ultimate mistake was the motion's designating the wrong subsection of Rule 60(b). As the present attorney general implicitly recognizes in her brief, the appropriate subsection was (4), "the judgment is void." For an attorney general to stipulate that an act of the legislature is unconstitutional is a clear confusion of the three branches of government; it is the judicial branch, not the executive, that may reject legislation. This is not to say that at a full-dress review an attorney general may not inform the court that, in his opinion, a statute is flawed, e.g., Delchamps, Inc. v. Alabama State Milk Control Board, 324 F.Supp. 117 (M.D.Ala.1971), but this would be in the context that the court was to make the final, considered ruling. Here the court expressly recited that it was not doing this. An attorney general can have no authority to be the binding determiner that legislation is unconstitutional. The agreed judgment was void on its face.
 
 
 8
 Coming thus to the merits, Rhode Island Gen.Laws Sec. 11-27-2 states that the term "practice of law" "shall be deemed to include ... (3) the undertaking or acting as a representative or on behalf of another person to commence, settle, compromise, adjust or dispose of any civil or criminal case or cause of action...." The district court held, and we accept, that this language applies to persons seeking payment of debts owed to others in the normal course, even though there has been no mention or threat of legal proceedings. Creditors' Service Corporation v. Cummings, 57 R.I. 291, 190 A. 2 (1937). The court further held, and we agree, that debt collecting, as by plaintiff, involves interstate commerce directly, and also it affects it indirectly because parties engaged in interstate commerce frequently rely upon such services. Hence, the constitutional issue was squarely raised.
 
 
 9
 The court commenced its review by observing, though conceding it was not the answer, that the state has a right to define the practice of law. Only the Rhode Island Bar Association, as amicus, attempts this easy solution. The attorney general, to her credit, does not assert that the state's recognized authority over the practice of law, see, e.g., Goldfarb v. Virginia State Bar, 421 U.S. 773, 793, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975), insulates its actions from challenge under the commerce clause. She says, however, that the present definition is reasonable because "debt collection practices are intimately related to the use of state courts and the regulation of the practice of law in those courts." It may be reasonable in one sense, but the question remains whether, by including activities that fall short of court proceedings, the state has put an impermissible burden on interstate commerce. This question is not, of course, restricted to, or measured by, plaintiff individually.[4]
 
 
 10
 It is common ground that debt collecting is a matter of public concern and is subject to regulation in the public interest. Congress, in fact, has so recognized. See Fair Debt Collection Practices Act Sec. 802, 15 U.S.C. Sec. 1692 (congressional findings). It has recognized, too, that a state statute may be more stringent than the federal act in its substantive provisions. Section 1692n provides as follows.
 
 
 11
 This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.
 
 
 12
 To the district court this was the answer. It is not. It is true that Congress may authorize state legislation that would otherwise offend the commerce clause. Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 655, 101 S.Ct. 2070, 2076, 68 L.Ed.2d 514 (1981); Southern Pacific Co. v. Arizona, 325 U.S. 761, 769, 65 S.Ct. 1515, 1520, 89 L.Ed. 1915 (1945). However, this exemption must be "unmistakably clear." South-Central Timber Development, Inc. v. Wunnicke, 467 U.S. 82, 91, 104 S.Ct. 2237, 2242, 81 L.Ed.2d 71 (1984), quoted in Maine v. Taylor, --- U.S. ----, 106 S.Ct. 2440, 2448, 91 L.Ed.2d 110 (1986). We do not read the last quoted sentence of Sec. 1692n, ante, in any such light. Nor did the Second Circuit, even before the Supreme Court in Maine v. Taylor had emphasized the state's heavy burden. See Silver v. Woolf, 694 F.2d 8, 14 (2d Cir.1982), cert. denied, 460 U.S. 1071, 103 S.Ct. 1525, 75 L.Ed.2d 948. We view Maine v. Taylor, decided two months before the attorney general's brief (not since supplemented), as fully rejecting the state's contention that mere Congressional authorization of consistent state legislation lowered the intensity of scrutiny with respect to the commerce clause. See 106 S.Ct. at 2448.
 
 
 13
 Nor can we think that a statute that forecloses out-of-state debt collectors, en masse, from seeking to collect debts from Rhode Island citizens imposes a "merely incidental" burden on interstate commerce.[5] This is a substantial burden, both "on its face [and] in practical effect." See Maine v. Taylor, 106 S.Ct. at 2448 (quoting Hughes v. Oklahoma, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979)). Hence, "the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." Id. It has demonstrated neither.
 
 
 14
 We begin with the attorney general's contention that the statute is evenhanded: it prohibits all debt collection activities (apart from specified exceptions not here relevant), whether the companies engaging in those activities are located within the state or without. This does not prevent a discrimination against out-of-state commerce. By defining all debt collection as the practice of law, and limiting this practice to members of the Rhode Island bar, Rhode Island effectively bars out-of-staters from offering a commercial service within its borders and confers the right to provide that service--and to reap the associated economic benefit--upon a class largely composed of Rhode Island citizens. Cf. Sporhase v. Nebraska ex rel. Douglas, 458 U.S. 941, 957, 102 S.Ct. 3456, 3464, 73 L.Ed.2d 1254 (1982); Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 348-53, 97 S.Ct. 2434, 2444-46, 53 L.Ed.2d 383 (1977). There is no basis shown for the district court's speculation that "lawyers [can] provide the same services which debt collection agencies provide at the same expense to the customer." This would seem rebutted not only by the savings normally attributable to large scale operation, but by the very existence of national companies like the plaintiff. Furthermore, even if the speculation were correct, the statute deprives the citizens of Rhode Island of any benefits arising from competition. Cf. H.P. Hood & Sons v. Du Mond, 336 U.S. 525, 539, 69 S.Ct. 657, 665, 93 L.Ed. 865 (1949) ("Our system, fostered by the Commerce Clause, is that ... every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any."), cited in New Hampshire Automobile Dealers Association v. General Motors Corp., 801 F.2d 528, 532 (1986). In this circumstance it might appear that the local purpose, rather than being legitimate, is, in substantial part, to benefit the local bar. This appearance can be rebutted only by showing a legitimate purpose that could not be served as well by non-discriminatory means.
 
 
 15
 No such showing has been made. Plaintiff asserts, without contradiction, that of all the states that have seen fit to regulate debt collection--some 27 states, for example, have established a licensing program--only Rhode Island restricts all collection activities to members of the bar. Faced with this unique position, the attorney general's counsel, even after repeated questioning, produced at oral argument nothing beyond an assertion that the legislature had chosen a reasonable means of regulation, seemingly because machinery was already in place to screen lawyers' ethical behavior. Passing the thought that requirements specifically directed to the collection business might be more appropriate than existing generalizations directed to lawyers, the fact that the other states have found it practical to supervise the collection business by less-restrictive means puts a heavy burden on the state. Administrative convenience is no answer.
 
 
 16
 Reversed and remanded.
 
 
 17
 TORRUELLA, Circuit Judge (dissenting).
 
 
 18
 With all due respect I cannot agree that the Rhode Island statute in question, Gen.Laws ch. 11-27-2, unconstitutionally burdens interstate commerce. See Maine v. Taylor, --- U.S. ----, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). That statute, which undertakes to define what constitutes the practice of law,[1] has been interpreted to generally prohibit nonlawyers from engaging in third party debt collection, Creditors' Service Corporation v. Cummings, 57 R.I. 291, 306 (1937). There is, however, nothing in its content or in the judicial interpretations circumscribing its reach, to indicate that it is a state-protectionist statute. On its face, and as far as the record is concerned, the statute applies with equal force to local as well as interstate debt collections.
 
 
 19
 The Supreme Court in Taylor reminded us of the long-standing constitutional proposition to the effect that "[t]he limitation imposed by the Commerce Clause on state regulatory power 'is by no means absolute', and [that] 'the States retain authority under their general police powers to regulate matters of 'legitimate local concern', even though interstate commerce may be affected." Taylor, 106 S.Ct. at 2447.[2]
 
 
 20
 In my opinion the statute as interpreted is nothing more than the exercise of Rhode Island's police power in determining how best to protect its citizens from what is an acknowledged "wide spread and serious national problem." 1977 U.S.Code Cong. & Admin.News 1695, 1696. Except for the fact that the Federal Fair Debt Collection Practice Act, 15 U.S.C. Sec. 1692, et seq., post-dates the Rhode Island statute, it could very well be argued that Congress encouraged such legislation when it stated that "[t]he primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the state level." 1977 U.S.Code Cong. & Admin.News 1695, 1696. The effect of Section 1692n[3] of the federal law is not only to reduce the areas of possible conflict between the Federal statute and relevant state legislation, but also to allow for more stringent local protection for affected citizens; it quite pointedly licensed the states to place burdens on interstate commerce.
 
 
 21
 The Court in Taylor indicated that "[i]n determining whether a State has overstepped its role in regulating interstate commerce, [there is a distinction] between state statutes that burden interstate transactions only incidentally, and those that affirmatively discriminate against such transactions ... [S]tatutes in the first group violate the Commerce Clause only if the burdens they impose on interstate trade are 'clearly excessive in relation to the putative local benefits', ... statutes in the second group are subject to more demanding scrutiny." Taylor, 106 S.Ct. at 2447-2448 (emphasis supplied). Because, as previously stated, the statute in question does not distinguish or differentiate in any way between Rhode Island and interstate transactions of the nature here involved, it cannot be said that the statute discriminates against interstate transactions.[4] Furthermore, it cannot be said that the method chosen by Rhode Island is "clearly excessive" in relation to the perceived benefits to its citizenry (i.e., third party collection of debts by persons subject to a strict code of ethics and disciplinary control), any more than if that state had opted to license all debt collectors indiscriminately. See Silver v. Woolf, 694 F.2d 8 (2d Cir.1982) (Connecticut statute requiring licensing of all consumer collection agencies within the state not an invalid burden on interstate commerce even as applied to a corporation which had no offices or employees in Connecticut).
 
 
 22
 Because I consider that any burden on interstate commerce imposed by R.I.Gen.Laws ch. 11-27-2 is incidental and thus not unconstitutional, I would affirm the decision of the district court.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 The court's order provided, in relevant part,
 The application of Chapter 11-27 of the Rhode Island General Laws of 1956 (1969 Reen.), as amended, to prohibit plaintiff from conducting its debt collection business in Rhode Island, so long as such conduct is in compliance with the Fair Debt Collection Practices Act, 15 U.S.C. Sec. 1692a et seq. and comparable state laws, would be unconstitutional under the Interstate Commerce Clause of the Constitution of the United States, Article I, Sec. 8, Clause 3.
 
 
 [2]
 60(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken
 
 
 [3]
 We disregard subsection (6), a catch-all provision that courts invoke only in extraordinary circumstances, see, e.g., Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1983), and not presently pressed by appellant
 
 
 [4]
 The attorney general correctly says that the issue is not whether plaintiff "is a model debt collector, or an unethical and ruthless debt collector, or somewhere in between." Rather, the question must be whether all Rhode Island commercial debt collection operations in interstate commerce, no matter how properly and ethically conducted, are to be forbidden unless carried on by Rhode Island lawyers
 
 
 [5]
 In light of our dissenting brother's viewing the burden as "merely incidental," we observe that we would find the statute failing even under the "incidental" requirement. For the reasons hereinafter discussed, we believe the burden on interstate commerce "clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)
 
 
 [1]
 R.I.Gen.Laws Sec. 11-27-2, the term "practice of law":
 shall be deemed to include ... (3) the undertaking or acting as a representative or on behalf of another person to commence, settle compromise, adjust or dispose of any civil or criminal case or cause of action.
 
 
 [2]
 Citing from Lewis v. B.T. Investment Managers, Inc., 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980)
 
 
 [3]
 15 U.S.C. Sec. 1692n
 This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.
 
 
 [4]
 See Webster's Third New International Dictionary, p. 648