Mike O'CALLAGHAN, Appellant,

and

Jed Whittaker and Robert Gigler, Intervenors,

v.

State of Alaska Lieutenant Governor Jack COGHILL, in his official capacity as Lieutenant Governor, Appellee.

No. S–6249.

Supreme Court of Alaska.

Feb. 3, 1995.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### ORDER AND MEMORANDUM OPINION

Mike O'Callaghan challenges regulations which exempted the Republican Party from Alaska's blanket primary statute. We find that this case cannot be properly decided without supplementary briefing on the issue of whether Alaska's blanket primary statute is unconstitutional. We invite Alaska's four main political parties and the Legislative Affairs Agency to join this case as amici or intervenors and to file supplementary briefs along with O'Callaghan and the State.

### I.  FACTS AND PROCEEDINGS

Alaska Statute 15.25.060 provides for a blanket primary. All primary candidates are listed on a single ballot without regard to party affiliation. All eligible voters may participate without regard to party affiliation.

In 1990, the Republican Party of Alaska adopted a party rule which allows only registered Republicans, registered Independents, and persons who state no party affiliation to vote in the Republican primary. As the party rule conflicted with the blanket primary statute, the Republican Party challenged the statute's constitutionality in federal court. *Zawacki v. State*, No. A92–414–CIV (D.Alaska 1992). By stipulation of the parties District Court Judge James K. Singleton dismissed the case without prejudice as follows:

## STIPULATION AND APPROVAL

The parties stipulate that in light of the Court's preliminary conclusion that the Lt. Governor has the authority to promulgate regulations implementing the principles enunciated in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 [107 S.Ct. 544, 93 L.Ed.2d 514] (1986),[1] the Lt. Governor will adopt emergency regulations that:

(1) Provide for two separate ballots for the primary election as follows:

(a) a Republican only ballot containing names of Republican candidates only and available only to Republican, non-partisan and undeclared voters, and

(b) a statutory ballot containing candidates of all other parties and available to all voters.

The parties also stipulate that:

(2) A voter may only select and vote one ballot;

(3) That this case is dismissed by joint agreement of the parties.

### ORDER

IT IS SO APPROVED and this case is hereby dismissed without prejudice.

Before the 1992 primary, the Director of Elections adopted emergency temporary regulations providing for a separate primary ballot for the Republican Party in the manner described by the stipulation. Before the 1994 primary, the Director of Elections adopted identical permanent regulations. 6 AAC 28.100.150.

Mike O'Callaghan voted in the 1992 primary election. O'Callaghan filed a complaint before the superior court challenging the legality of the 1992 primary election. O'Callaghan later moved for a temporary restraining order to prevent the State from implementing the permanent regulations providing for separate ballots. The superior court de-

nied the motion for a temporary restraining order and granted the State summary judgment on O'Callaghan's complaint. O'Callaghan appeals to this court.

## II. DISCUSSION

■ The State argues that the challenged regulations are valid because they "were properly adopted in accordance with a stipulation sanctioned by the United States District Court." This argument is not supported by the law, since a stipulation or consent judgment declaring a law unconstitutional is not valid. *E.g., National Revenue Corp. v. Violet*, 807 F.2d 285 (1st Cir.1986); *West v. Bank of Commerce & Trusts*, 167 F.2d 664 (4th Cir.1948).

In *Violet*, a federal district court entered a consent judgment declaring a Rhode Island statute unconstitutional "by agreement of the parties." 807 F.2d at 286–87. The First Circuit held that the Rhode Island attorney general had no power to stipulate that a law is unconstitutional and that the judgment was facially void, stating:

> For an attorney general to stipulate that an act of the legislature is unconstitutional is a clear confusion of the three branches of government; it is the judicial branch, not the executive, that may reject legislation.... An attorney general can have no authority to be the binding determiner that legislation is unconstitutional. The agreed judgment was void on its face.

*Id.* at 288.

In *West*, the court held that a city attorney had no authority to agree to a consent decree ruling a zoning ordinance unconstitutional. 167 F.2d at 666. The court held that the decree was not binding upon the city. *Id.* at 666–67. The court stated that "parties may not stipulate the invalidity of statutes or ordinances, and ... courts are required to disregard such stipulations since matters of public interest transcending the rights of the litigants are involved." *Id.* at 666. *See also*

---

1. *Tashjian* struck down Connecticut's closed primary as applied to a Republican Party rule allowing independent voters to participate in the Republican primary.

*Guinther v. Wilkinson*, 679 F.Supp. 1066, 1067–68 (D.Utah 1988) (refusing to accept an attorney general's stipulation that a statute is unconstitutional); *Peckham v. People*, 32 Colo. 140, 75 P. 422, 423 (1904) ("It is not within the power of counsel to enter into a stipulation the effect of which will render a law void"); *Yelton v. Plantz*, 226 Ind. 155, 77 N.E.2d 895, 899 (1948) ("[Q]uestions of law are beyond the power of agreement by the attorneys or parties, and a stipulation that a statute is constitutional would be a nullity."); *Com. ex rel. Breckinridge v. Nunn*, 452 S.W.2d 381, 382 (Ky.App.1970) (following *West* and stating, "The structure of government cannot be changed by the actions of private litigants."); *E. Fougera & Co. v. City of New York*, 224 N.Y. 269, 120 N.E. 642, 643 (1918) ("Laws are not to be declared invalid upon the consent of parties."), *quoted in Dresser Industries, Inc. v. Alaska Dept. of Labor*, 633 P.2d 998, 1005 (Alaska 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *State v. Schnitger*, 16 Wyo. 479, 95 P. 698, 701 (1908) ("The question of the constitutionality of a statute is a judicial question, and it is not within the power of parties litigant to admit or stipulate as to their invalidity.").

Thus, the stipulation which the State relies on is invalid. If the stipulation had resulted in a consent judgment, we would, in the interests of comity, ask the Attorney General to file a motion to have the federal court vacate the judgment in *Zawacki* and rule on the merits. *See Violet*, 807 F.2d at 287 (Rhode Island Supreme Court suggested to attorney general who agreed to consent judgment declaring statute unconstitutional that motion be filed to vacate judgment). In this case, however, there is no consent judgment. Judge Singleton's order only states that the court approves the parties' stipulation and dismisses the case without prejudice. Judge Singleton considered structuring his order as a consent judgment, but this option was rejected. We therefore retain jurisdiction over this case and address the State's other arguments.

The State contends that the regulations are valid because the blanket primary statute is clearly unconstitutional under *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986). We agree with the State that authority exists supporting the proposition that the executive branch may abrogate a statute which is clearly unconstitutional under a United States Supreme Court decision dealing with a similar law, without having to wait for another court decision specifically declaring the statute unconstitutional. In *Wade v. Nolan*, 414 P.2d 689 (Alaska 1966), the Governor reapportioned Alaska's Senate districts to base them on population instead of area. The Governor acted after the Supreme Court ruled in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), that the equal protection clause of the Fourteenth Amendment requires both houses of state bicameral legislatures to be apportioned on a population basis so that the resulting districts have substantially equal populations. The Governor acted before any court had specifically declared that Alaska's area-based Senate districts, which had grossly unequal populations, violated equal protection. *Wade*, 414 P.2d at 692. We upheld the Governor's authority to order the redistricting without even explicitly discussing the issue of whether the Governor had to wait for a court decision specifically holding Alaska's Senate districts unconstitutional. *Id.* at 700–01. *See also Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 5 (1958) (holding that the governor and legislature of Arkansas were bound by the Supreme Court's previous desegregation decisions though they were not parties to those decisions and stating that the Court's interpretations of the Constitution are "the supreme law of the land"); *Hetherington v. McHale*, 10 Pa. Cmwlth. 501, 311 A.2d 162, 167 (1973) (suggesting that an attorney general may unilaterally implement a Supreme Court decision where that decision is "clearly and unequivocal[ly]" applicable to a statute which is the "same [as] or similar to" the invalidated statute), *rev'd on other grounds*, 458 Pa. 479, 329 A.2d 250 (1974).

■ However, the State's contention that the blanket primary statute is clearly uncon-

stitutional under *Tashjian,* 479 U.S. 208, 107 S.Ct. 544, is incorrect. In *Tashjian,* the Connecticut Republican Party adopted a party rule which allowed independent voters to vote in the Republican primary. The party rule conflicted with Connecticut's closed primary statute. *Id.* at 211–14, 107 S.Ct. at 546–49. The Supreme Court held that the primary statute was unconstitutional as applied to the Republican Party. *Id.* at 225, 107 S.Ct. at 554. Alaska's statute is not similar to the statute in *Tashjian,* since Alaska's statute prevents political parties from limiting voter participation, while the statute in *Tashjian* kept political parties from expanding participation.

The Court in *Tashjian* set out the following test for determining the constitutionality of a state election law:

> [C]onstitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court ... must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* at 213–14, 107 S.Ct. at 548 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)) (omissions in original). *Tashjian* thus requires the state's interests in an election law to be balanced against the burden placed on a plaintiff's rights. Both the statute in *Tashjian* and the Alaska statute implicate the associational rights of members of the Republican Party. The interests that Connecticut put forward in defense of the *Tashjian* statute were "ensuring the administrability of the primary system, preventing raiding, avoiding voter confusion, and protecting the responsibility of party government." *Id.* at 217, 107 S.Ct. at 550. The Court found those interests to be "insubstantial." *Id.* at 225, 107 S.Ct. at 554. The state interests behind Alaska's blanket primary statute appear to be very different from the state interests asserted in defense of Connecticut's statute. The interests supporting Alaska's statute include encouraging voter participation in primaries and enhancing voter choice. *See* 1992 Legislative Resolve No. 67 (SCR 30). Whether these interests outweigh the burden the blanket primary statute imposes on associational rights is not decided in *Tashjian.* Therefore, the blanket primary statute is not clearly unconstitutional under *Tashjian.*

Thus, neither the federal court stipulation nor the argument that the blanket primary statute is clearly unconstitutional can be used to uphold the challenged regulations. Consequently, to determine the legality of the last two primary elections, we must decide whether the blanket primary statute is constitutional. However, the constitutionality of the statute has not been adequately briefed by the parties.

### III. *ORDER*

We therefore invite the following organizations to join this case as amici or intervenors: the Alaskan Independence Party, the Democratic Party of Alaska, the Green Party of Alaska, the Legislative Affairs Agency, and the Republican Party of Alaska. We invite these organizations and the present parties to the case to file supplementary briefs on the issue of whether the blanket primary statute is constitutional. The five invited entities, as well as any other parties interested in joining this case, must submit motions to intervene or motions to file an amicus brief on or before February 24, 1995, if they wish to participate in the supplementary briefing.

The supplementary briefs are to address only the constitutionality of Alaska's blanket primary statute and may not address any of the other issues in this case. We encourage

**1306**

parties which have the same position on the constitutionality of the statute to submit combined briefs, though they may submit separate briefs if they so choose. The supplementary briefing shall be done simultaneously. Opening briefs of all parties and amici must be filed on or before March 27, 1995, and may not exceed 40 numbered pages each. Reply briefs of all parties and amici must be filed on or before April 17, 1995, and may not exceed 20 numbered pages each. Briefing shall otherwise follow the requirements of Appellate Rule 212. Oral argument will be held if requested before April 21, 1995. No extensions will be granted.

IT IS SO ORDERED.

Entered by direction of the court at Anchorage, Alaska on February 3, 1995.