Mike O'CALLAGHAN, Appellant,

v.

STATE of Alaska, DIRECTOR OF ELECTIONS Janet Kowalski, Appellee.

No. S–9768.

Supreme Court of Alaska.

Aug. 16, 2000.

Rehearing Denied Sept. 29, 2000.

---

Mike O'Callaghan, pro se, Anchorage.
James L. Baldwin, Assistant Attorney Gener-

al, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Max F. Gruenberg, Jr., Gruenberg, Clover and Holland, Anchorage, for Amicus Curiae Alaskan Voters for an Open Primary.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

PER CURIAM.

¶ 1   Mike O'Callaghan appeals the superior court's order denying his challenge to emergency regulations [1] promulgated by the Alaska Division of Elections that temporarily adopt a partially closed ballot primary election to replace the blanket primary election prescribed in AS 15.25.060.

¶ 2   In *O'Callaghan v. Coghill*, (*O'Callaghan I*), we concluded that the blanket primary election prescribed in AS 15.25.060 did not clearly deprive political parties of their right of free association, as guaranteed by the First Amendment of the United States Constitution.[2]   In *O'Callaghan v. State*, (*O'Callaghan II*), after considering supplemental briefing requested in *O'Callaghan I*, we found AS 15.25.060 to be constitutional.[3] We therefore invalidated regulations promulgated by the Division of Elections implementing a partially closed ballot primary.[4]

¶ 3   On June 26, 2000, the United States Supreme Court decided in *California Democratic Party v. Jones* that California's blanket primary statute violates the First Amendment's guarantee of associational freedom.[5]

¶ 4   Having reviewed *Jones*, we find no constitutionally significant differences between Alaska's primary election law and the California law declared unconstitutional

in *Jones*.   Nor do we find any principled basis for concluding that Alaska's blanket primary election statute remains constitutional in light of *Jones*.   Because the United States Constitution's Supremacy Clause requires states to adhere to the Supreme Court's constitutional interpretation in *Jones*,[6] we hold that *O'Callaghan II*'s ruling that AS 15.25.060 is constitutional is no longer tenable.

¶ 5   In *O'Callaghan I*, we determined that the Division of Elections, as an executive branch agency, would have authority to "abrogate a statute which is clearly unconstitutional under a United States Supreme Court decision dealing with a similar law, without having to wait for another court decision specifically declaring the statute unconstitutional."[7]   We conclude that AS 15.25.060 is clearly unconstitutional and that, given *Jones*, the division had authority to abrogate the statute.

¶ 6   By acknowledging in *O'Callaghan I* and *O'Callaghan II* that the validity of the challenged regulations turned on the unconstitutionality of AS 15.25.060, we implicitly determined that the division's power to abrogate a clearly unconstitutional statute triggered its authority to regulate on a temporary basis in an emergent situation like the situation we face here.[8]   The Supreme Court issued *Jones* less than two months before the Alaska primary's scheduled date.   The Alaska Legislature is out of session and will not reconvene until January 2001.   Given these circumstances, we conclude that the division has authority to promulgate emergency regulations to implement a primary election that complies with the constitutional mandate of *Jones*.   We find that the division's power to take the temporary action needed to ensure a timely and constitutional primary is solidly rooted in the principle of necessity and in the division's statutory powers of supervision

---

1.  6 Alaska Administrative Code (AAC) 28.101–.900.

2.  *See* 888 P.2d 1302, 1305–06 (Alaska 1995).

3.  *See* 914 P.2d 1250, 1263 (Alaska 1996).

4.  *See id.* at 1264.

5.  *See* —— U.S. ——, 120 S.Ct. 2402, 2414, 147 L.Ed.2d 502 (2000).

6.  *See* U.S. Const. art. VI.

7.  888 P.2d at 1304.

8.  *See O'Callaghan II*, 914 P.2d at 1264; *O'Callaghan I*, 888 P.2d at 1305.

over elections.[9] Accordingly, we reject O'Callaghan's contention that the division lacked authority to adopt curative emergency regulations in response to the decision in *Jones*.

¶ 7 We also reject O'Callaghan's argument that the division's emergency regulations prescribe an unlawful form of ballot, "the same ballot type declared unlawful by this Court" in *O'Callaghan II*. In that case we declared the partially closed ballot unlawful only because it was inconsistent with AS 15.25.060; in no other context did we even consider the validity of that form of ballot. Because we found AS 15.25.060 to be constitutional, we simply ruled that the division lacked authority to adopt or implement any other form of primary ballot—including the partially closed ballot.[10] Now that *Jones* overturns *O'Callaghan II*'s constitutional ruling, our decision in that case provides no basis for questioning the division's new emergency regulations; nor did it ever support the conclusion that a partially closed ballot primary is inherently an unlawful form of election.

¶ 8 We are similarly unpersuaded by O'Callaghan's reliance on *O'Callaghan II* for the proposition that a partially closed ballot primary extinguishes his right to vote for candidates of his choice, regardless of party affiliation. O'Callaghan quotes language from *O'Callaghan II* supporting this proposition; but the language he quotes simply paraphrased provisions of the Alaska Statutes establishing Alaska's "blanket primary" system[11]—a system that *Jones* has now declared unconstitutional. As the state correctly notes, the United States Supreme Court, in *Jones*, expressly considered and rejected the notion of a fundamental right to vote in a primary election for all candidates, regardless of party affiliation.[12]

¶ 9 O'Callaghan raises a closer question in contending that the partially closed primary violates the Alaska Constitution's guarantee that "[s]ecrecy of voting shall be preserved."[13] By requiring voters who opt for the Republican ballot to disclose their party affiliation as a condition of receiving their ballots, the partially closed ballot system implicates legitimate privacy concerns. But party affiliation has traditionally been a matter of public record.[14] While the partially closed ballot system requires voters to disclose their ballot preference in addition to their party affiliation, case law in other jurisdictions addressing the secrecy issue firmly establishes that, in the context of primary elections—elections whose central purpose is to select parties' nominees[15]—this marginally greater demand for disclosure falls well outside the Constitution's core concern for preserving the secrecy of voting, as opposed to the secrecy of party preference.[16] On

---

9. *See* AS 15.15.010 (giving the director of elections authority over the conduct of state elections); AS 15.25.090 (extending this authority to primary elections); and AS 44.62.250 (authorizing adoption of emergency regulations).

10. *See O'Callaghan II*, 914 P.2d at 1263–64.

11. *See O'Callaghan II*, 914 P.2d at 1252.

12. *See Jones*, 120 S.Ct. at 2407 n. 5, 2413.

13. Alaska Const. art. V, § 3.

14. *See* AS 15.07.127 (requiring director to compile list of registered voters that includes party affiliation, and to provide this list to "[a]ny person").

15. *See* AS 15.25.010 ("Candidates for the elective state executive and state and national legislative offices *shall be nominated in a primary election by direct vote of the people* ....") (emphasis

added); AS 15.25.100 ("The director shall place the name of the candidate receiving the highest number of votes for an office *by a political party* on the general election ballot.") (emphasis added).

16. *See, e.g., Lett v. Dennis*, 221 Ala. 432, 129 So. 33, 34–35 (1930) ("[I]t is the secrecy of the ballot which the [Alabama statute] protects and not secrecy as to the political party with which the voters intend to act."); *Katz v. Fitzgerald*, 152 Cal. 433, 93 P. 112, 113 (1907) ("[I]t is the secrecy of the ballot which [the California constitution] protects, and not secrecy as to the political party with which the voter desires to act."); *State v. Beggs*, 126 Kan. 811, 271 P. 400, 402 (1928) ("The secrecy required [by the Kansas constitution] is as to his vote for candidates, not as to political leaning or party affiliation."); *Ferency v. Secretary of State*, 190 Mich.App. 398, 476 N.W.2d 417, 424–25 (1991), *rev'd on other grounds*, 439 Mich. 1021, 486 N.W.2d 664 (1992) (ballot secrecy requirement of Michigan constitution not violated by requiring voters to declare

balance, then, we conclude that, as long as the division takes necessary steps to prevent individual voters' ballot preferences from becoming a matter of public record,[17] the partially closed ballot does not impermissibly infringe the Constitution's voting secrecy clause.

¶ 10 We reject as meritless O'Callaghan's contention that inclusion of a "statutory ballot" in the partially closed ballot system is impermissible because *Jones* declared AS 15.25.060—the statute at issue—unconstitutional. *Jones* holds that the freedom of association guaranteed by the First Amendment prohibits a statutory ballot that, like the ballot prescribed in AS 15.25.060, allows voters who are not party members to vote in a primary election for candidates of a party that does not consent to the non-members voting.[18] But this constitutional prohibition dissipates when, as here, an emergency regulation prescribes a reformed "statutory ballot" that omits all candidates of the non-consenting party. Since the "statutory ballot" at issue here refers to the ballot that the division has reformed to comply with *Jones*'s mandate, we find nothing impermissible in the division's specification that the partially closed ballot system include a "statutory ballot."

¶ 11 We similarly find no merit in O'Callaghan's claim that the division ignored the "clear mandate" of *Jones* by adopting a partially closed primary ballot instead of a non-partisan blanket primary ballot.

a. Although *Jones* does expressly point out that a non-partisan blanket primary would pass constitutional muster, *Jones* says nothing to suggest that this is the only constitutionally permissible form of primary ballot or that the non-partisan ballot form deserves preference over other constitutionally permissible forms.[19]

b. Publication of *Jones* on June 26 left the division less than two months to adopt, implement, and carry out a new form of primary election that would not violate the Republican Party's associational rights. A non-partisan blanket ballot of the kind described in *Jones* would have forced the division to set in motion an unfamiliar process that would have required it to call upon each political party to nominate the party's own slate of candidates for the non-partisan primary ballot.[20]

c. The viability of this non-partisan system presupposes adequate time for its implementation by the division and by political parties alike—time that scarcely existed in this case.[21]

d. Moreover, the non-partisan primary's central assumption that political parties should select their candidates directly conflicts with a fundamental policy long embedded in Alaska's election laws: the notion that party candidates should be nominated by an open, public process—that candidates "be nominated in a primary election by direct vote of the people"[22] and that "the candidate receiving the highest number of votes for an office by a political party" appear on the general election ballot.[23]

e. In sum, given the time constraints facing the division, the untried and relatively elaborate demands it would face in implementing a non-partisan primary, and the basic incompatibility of that process with Alaska's statutory goal of requiring—to the maximum permissible extent—that political parties nominate their candidates through an open and public electoral process, we find no basis for concluding that the division overstepped its emergency powers by opting for the partially closed primary ballot.

---

publicly their party affiliation in order to vote in primary).

**17.** O'Callaghan has not contended or shown that ballot preference would become a matter of public record under the challenged emergency regulations.

**18.** *See Jones,* 120 S.Ct. at 2409–10.

**19.** *See id.* at 2414.

**20.** *See id.*

**21.** O'Callaghan filed suit on July 5, 2000, the superior court issued its ruling on July 12, we heard oral argument on July 25 following expedited briefing, and issued a preliminary order affirming on July 25.

**22.** AS 15.25.010.

**23.** AS 15.25.100.

¶ 12  For the foregoing reasons, we AF-FIRM the superior court's decision denying O'Callaghan's request for injunctive and declaratory relief.