VOTE CHOICE, INC.; Gun Owners Political Action Committee; Elizabeth Leonard; Pasquale E. Melaragno; Jane Doe; Rhode Island Affiliate, American Civil Liberties Union, Inc.; and Hasbro, Inc.

v.

Joseph DI STEFANO, in his official capacity as Chairman of the Rhode Island Board of Elections; Edward Grace, in his capacity as Chairman of the Rhode Island Public Telecommunications Authority; and James Malachowski, in his capacity as Administrator for the Rhode Island Division of Public Utilities.

Civ. A. No. 92–0451–P.

United States District Court,
D. Rhode Island.

Oct. 23, 1992.

See also 814 F.Supp. 195.

recently amended campaign finance laws. The challenged provisions regulate contributions and expenditures with respect to corporations, political action committees, and publicly-financed candidates. On August 27, 1992, this Court entered a temporary restraining order ("TRO") enjoining the defendants until further order of the Court from enforcing the provisions of R.I.G.L. §§ 17–25–15(c)(1), 17–25–10.1(j) and 17–25–30, in their entirety, and from enforcing § 17–25–10(a)(3) as against plaintiff American Civil Liberties Union and other non-profit corporations. A hearing on plaintiffs' Motion for Preliminary Injunction was held on October 5, 1992.

Following the October 5th hearing, the parties submitted proposed findings of fact, proposed conclusions of law, and a form of Order for permanent injunction with respect to those issues no longer in dispute. For the reasons discussed *infra* Part IV, the Court grants the requested permanent injunction, in part, and reserves judgment on the remaining issues pending further proceedings in accordance with this memorandum opinion.

Matthew F. Medeiros, Neal J. McNamara, Flanders & Medeiros, Providence, RI, for plaintiff.

Anthony J. Bucci, Jr., Licht & Semonoff, Providence, RI, for defendant.

Donald G. Elbert, Jr., Providence, RI, Carol F. Lee, Roger M. Witten, Eric Mogilnicki, Wilmer, Cutler & Pickering, Donald J. Simon, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for amicus—Common Cause of R.I. and Common Cause.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case involves a constitutional challenge to several provisions of Rhode Island's

## I. STATUTORY PROVISIONS

On April 28, 1992, the General Assembly of Rhode Island enacted, and the Governor signed into law, "An Act relating to Elections—Campaign Contributions" (92–H7293 Substitute A as amended) ("the Act"). The Act amended in numerous respects Chapter 25 of Title 17, R.I.G.L., entitled "Rhode Island Campaign Contributions and Expenditures—Reporting."

Specifically, the Legislature amended Chapter 25 of Title 17 to add, among other things, new provisions:

(a) requiring most political action committees ("PACs") to report the source and amount of all contributions, regardless of amount, R.I.G.L. § 17–25–15[1];

1. The amendment to R.I.G.L. § 17–25–15 provides in relevant part:
(c) In addition to all other reporting requirements, each political action committee shall include in each report required to be filed by this chapter:

(1) The source and amount of all funds received by the committee; provided however, that funds received through a regular payroll checkoff plan in which the aggregate contribution from each individual does not exceed one hundred dollars ($100) per calendar year shall

(b) banning corporate contributions and expenditures with respect to candidates, ballot questions, PACs and political parties, R.I.G.L. § 17–25–10.1(j) [2];

(c) requiring all contributions and expenditures with respect to ballot questions to be filtered through a PAC, R.I.G.L. § 17–25–10(a)(3) [3];

(d) providing incentives in the form of free television advertising and higher contribution limits to candidates who participate in the state's public financing program, R.I.G.L. § 17–25–30 [4]; and

(e) allowing the Rhode Island Board of Elections to reject the use of a misleading PAC name, R.I.G.L. § 17–25–15(d) [5].

## II. THE PARTIES

Plaintiff Vote Choice is a Rhode Island PAC dedicated to keeping abortion safe, legal, and available in Rhode Island. Vote Choice, along with Plaintiff Jane Doe, a contributor to Vote Choice, specifically challenges R.I.G.L. § 17–25–15(c)(1) which requires most, but not all, PACs to disclose the names and addresses of all contributors regardless of the amount of contribution. Vote Choice claims that this measure will deter its usual donors from contributing because of possible recriminations from family, church, or workplace.

Plaintiff Gun Owners PAC ("GOPAC") is a PAC affiliated with the Rhode Island State Rifle & Revolver Association, and advocates the rights of firearms owners and sportsmen. GOPAC, along with Plaintiff Pasquale Melaragno, a contributor to GOPAC, challenges the reporting requirements of R.I.G.L. § 17–25–15(c) for the same reasons as Vote Choice.

Plaintiff Elizabeth Leonard is a candidate for Governor of Rhode Island, and has chosen not to accept public financing for her campaign. She specifically challenges provisions of § 17–25–30 which provide free advertising and larger contribution limits for

report [sic] the name and address of each entity transferring such funds to the committee, the aggregate amount received from the payroll checkoff, and the total number of contributors; and provided however, that funds received by the political action committee of a labor organization from the members of said organization in amounts not exceeding twenty-five dollars ($25.00) per calendar year from a single source shall be reported by the aggregate amount received and the total number of members of the labor organization contributing.

2. R.I.G.L. § 17–25–10.1(j) provides:
No entity other than an individual, a political action committee which is duly registered and qualified pursuant to the terms of this chapter, political party committee authorized by title 17 of the general laws, or an authorized committee of an elected official or candidate established pursuant to this chapter shall make any contribution to or any expenditure on behalf of or in opposition to any candidate, ballot question, political action committee or political party.

3. R.I.G.L. § 17–25–10(a)(3) provides in relevant part:
(a) No contribution shall be made or received and no expenditure shall be made or incurred, ... to advocate the approval or rejection of any question in any election except through:
(3) The duly appointed campaign treasurer or deputy campaign treasurer of a political action committee.

4. R.I.G.L. § 17–25–30 provides:

Any candidate eligible to receive public funds who shall comply in full with all eligibility criteria for receipt of such funds shall be:
(1) entitled to an additional benefit of free time on community antenna television to be allocated pursuant to rules determined by the administrator for the division of public utilities. During all such allocated free time the candidate shall personally appear and present the message of the advertisement;
(2) entitled to an additional benefit of free time on any public broadcasting station operating under the jurisdiction of the Rhode Island public telecommunications authority pursuant to rules determined by said authority. During all such allocated free time the candidate shall personally appear and present the message of the advertisement and;
(3) entitled to accept a contribution or contributions which in the aggregate do not exceed two thousand dollars ($2,000) from any person or political action committee within a calendar year.

5. R.I.G.L. § 17–25–15(d) provides:

The board of elections may reject the use by a political action committee of a name which is misleading and/or does not accurately identify the membership or contributor base of the committee.

publicly financed candidates, on the grounds that they penalize candidates who do not accept public financing.

Plaintiff American Civil Liberties Union, Inc. ("ACLU") is a non-profit, non-partisan organization, dedicated to promoting and protecting individual rights and civil liberties through educational and advocacy activities. The ACLU specifically challenges § 17–25–10.1(j)'s prohibition on independent corporate contributions and expenditures to influence ballot questions, as it applies to non-profit corporations. Plaintiff Hasbro, Inc. ("Hasbro"), a for-profit corporation, also challenges § 17–25–10.1(j)'s prohibition, as it applies to for-profit corporations. In addition, both the ACLU and Hasbro challenge § 17–25–10(a)(3), which requires all contributions and expenditures regarding ballot questions to be filtered through a PAC.

Defendant Joseph Di Stephano is Chairman of the Rhode Island Board of Elections ("the Board"), the agency charged with administering and enforcing the state campaign finance laws. Defendant Edward Grace is chairman of the Rhode Island Public Telecommunications Authority and defendant James Malachowski is administrator of the Rhode Island Division of Public Utilities.

## III.  PROCEDURAL BACKGROUND

On August 24, 1992, plaintiffs filed the instant action challenging the constitutionality of each of the above provisions under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also moved the Court for a TRO specifically enjoining the defendants from enforcing the provisions of §§ 17–25–15(c)(1), 17–25–10.1(j), and 17–25–30, and enjoining the enforcement of § 17–25–10(a)(3) as against non-profit corporations.[6] The Court granted the requested TRO on August 27, 1992, and set a preliminary injunction hearing date for October 5, 1992.[7]

---

**6.** The complaint was later amended to add Hasbro as a plaintiff, in order to challenge the enforcement of § 17–25–10(a)(3) as against for-profit corporations.

**7.** Plaintiff Hasbro was not a party to the action as of the date of entry of the TRO, and plaintiffs'

In anticipation of the October 5th hearing defendant Board of Elections informed plaintiffs' counsel, the Attorney General, and the Court that

> after substantial research, the Board of Elections agrees that the United States Supreme Court case of *First National Bank of Boston v. Bellotti,* 435 U.S. 765[, 98 S.Ct. 1407, 55 L.Ed.2d 707] (1978) makes it unconstitutional for a state statute to prevent a corporation (profit or non-profit) from making independent expenditures to aid or defeat a referendum question.
>
> In order to save additional attorney fees that might otherwise be awarded if the Board defends the statute, the Board has decided that it will not defend that aspect of your complaint. Letter from Anthony Bucci to Matthew Medeiros, September 17, 1992.

In addition, the Board stated that *"National Revenue Corporation v. Attorney General of the State of Rhode Island,* 807 F.2d 285, at 288 (1st Cir.1986), prevents a state agency from entering into a consent judgment stipulating that a state statute is unconstitutional." *Id.*

It is unclear exactly what defense counsel meant in his letter to plaintiffs' counsel, quoted *supra,* by "that aspect of your complaint." Logically, the reference appears to be to plaintiffs' challenge to § 17–25–10.1(j)'s blanket prohibition on independent corporate contributions and expenditures to influence ballot questions. Indeed, at the October 5th hearing the Board did not mount any defense of that aspect of § 17–25–10.1(j), agreeing with plaintiffs' counsel that *Bellotti* controlled the issue.

On October 1, 1992, Hasbro joined the suit as a plaintiff. *See* Amended Complaint, filed October 1, 1992. Hasbro sought to extend the existing constitutional challenge to § 17–25–10(a)(3)'s segregated fund requirement as applied to *non*-profit corporations to *for-*

---

motion for TRO did not seek an Order with respect to enforcement of § 17–25–10(a)(3) as against for-profit corporations. As a result, that aspect of § 17–25–10(a)(3) is not covered by the August 27, 1992 Order.

profit corporations as well. While there was no pre-hearing representation made by the Board as to its decision whether or not to defend against this new challenge, at the October 5th hearing the Board declined to mount any defense of § 17–25–10(a)(3) as it applied either to non-profit or for-profit corporate expenditures. In addition, the Board and defendants Grace and Malachowski chose not to defend §§ 17–25–30(1) and (2), the provisions entitling publicly-funded candidates to free television time on community antenna television and on any public broadcasting station under the jurisdiction of the Rhode Island Public Telecommunications Authority.

As a result of the defendants' decisions not to defend the above measures, the parties presented evidence at the October 5th hearing concerning only two of the challenged provisions: (A) the disclosure requirements of § 17–25–15(c)(1), and (B) the $2,000.00 contribution limit threshold for publicly funded candidates found in § 17–25–30(3). After presenting testimony from plaintiffs' several witnesses and defendants' only witness, Chairman Di Stefano, the parties agreed to submit to the Court a proposed Order for Permanent Injunction on those issues that were not in contention. On October 6, 1992, at a conference with counsel held at the Court's request, the parties agreed to submit stipulated findings of fact and proposed findings of law, along with the proposed Order for Permanent Injunction.[8]

## IV. DISCUSSION

### A. *The Prohibition on Corporate Contributions*

■ Although the parties presented no evidence at the October 5th hearing with respect to § 17–25–10.1(j)'s ban on independent corporate contributions and expenditures to influence ballot questions, the plaintiffs' have

raised and sufficiently argued the issue in their memorandum in support of their motion for preliminary relief. After reviewing the papers submitted, and the relevant case law, I find that R.I.G.L. § 17–25–10.1(j), to the extent it prohibits corporate contributions and expenditures in support of, or in opposition to, "any ... ballot question," constitutes an unconstitutional infringement on the First and Fourteenth Amendment rights of plaintiffs ACLU and Hasbro. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

In *Bellotti*, the Supreme Court considered a challenge to a Massachusetts criminal statute forbidding expenditures by banks and business corporations for the purpose of influencing the vote on any referendum question other than one materially affecting the property, business or assets of the corporation. The Court held, among other things, that the State could not show the requisite compelling interest in this regulation of speech. *Id.* at 786, 795, 98 S.Ct. at 1421, 1426. The Court noted that laws regulating political donations and expenditures had as their sole legitimate objective the prevention of corruption of elected representatives. *Id.* at 788 n. 26, 98 S.Ct. at 1422 n. 26. That interest was not present in *Bellotti*, the Court stated, because "[r]eferenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections, (citations omitted), simply is not present in a popular vote on a public issue." *Id.* at 790, 98 S.Ct. at 1423.

The *Bellotti* holding may be subject to question. *See Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 669, 110 S.Ct. 1391, 1402, 108 L.Ed.2d 652 (1990) (upholding a state statute prohibiting independent corporate expenditures in connection with an election).[9] It is still the law of the land,

---

8. At this conference, counsel for the defendant Board of Elections again indicated that the Board could not stipulate to any finding of law holding a state statute unconstitutional, and would therefore not join in the proposed findings of law. He did agree, however, not to oppose entry of a permanent injunction with respect to all of the corporate contribution provisions.

9. In *Austin*, the Supreme Court departed from the "sole legitimate objective" (prevention of corruption of elected representatives) rationale and identified a heretofore unrecognized "compelling state interest of eliminating from the political process the corrosive effect of political 'war chests' amassed with the aid of the legal advantage given to corporations." 494 U.S. 652, 666, 110 S.Ct. 1391, 1401 (1990). The Court subse-

however, and must control this Court's decision with respect to § 17–25–10.1(j)'s blanket prohibition on corporate contributions and expenditures with respect to ballot questions. Under *Bellotti*, this aspect of the statute clearly violates the First and Fourteenth Amendment rights of plaintiffs ACLU and Hasbro. I do not hold in this memorandum, however, that *Bellotti* unequivocally controls any of the other issues presented in this case. *See* discussion *infra* Part IV–B.

### B. *The PAC Requirement*

■ Having decided that *Bellotti* prevents a state from prohibiting altogether corporate contributions and expenditures with respect to ballot questions, I must now address whether a state may require corporations to filter these contributions and expenditures through the medium of a political action committee.[10] R.I.G.L. § 17–25–10(a)(3) provides, in relevant part:

> (a) No contribution shall be made or received and no expenditure shall be made or incurred, ... to advocate the approval or rejection of any question in any election except through:
>
> (3) The duly appointed campaign treasurer or deputy campaign treasurer of a political action committee.

With respect to the application of this provision to non-profit corporations such as the ACLU, I believe that *FEC v. Massachusetts Citizens for Life ("MCFL")*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) directly controls the issue.

*MCFL* involved a section of the Federal Election Campaign Act ("FECA") that prohibited corporations from making expendi-

tures regarding an election campaign from its general funds, and instead required that expenditures be made through a separate segregated fund or PAC.[11] The Supreme Court held that this requirement was unconstitutional as applied to MCFL, a non-profit corporation, because the requirements of FECA were not narrowly tailored to serve the state's interest in disclosure. 479 U.S. at 265, 107 S.Ct. at 631. Justice Brennan set forth three considerations with respect to non-profit MCFL that he believed were essential to the Court's decision: (a) MCFL was not a business corporation, (b) MCFL was formed for the purpose of promoting political ideas, and (c) MCFL had no shareholders that had a claim on its assets or earnings.[12] These characteristics compelled the Court to find that the burden of speaking through a segregated fund by complying with the statutory regime (e.g., appointing a treasurer) was an impermissible infringement on MCFL's First Amendment activities. 479 U.S. at 255, 107 S.Ct. at 626.

In light of the Supreme Court's decision in *MCFL*, § 17–25–10(a)(3), as applied to plaintiff ACLU, a non-profit corporation having all the characteristics of MCFL, cannot withstand the plaintiffs' constitutional challenge under the First and Fourteenth Amendments. I do not accept, however, the parties' broad assertion, without more, that the *Bellotti* decision unquestionably prohibits application of § 17–25–10(a)(3) to for-profit corporations such as plaintiff Hasbro. In light of the Supreme Court's decisions in *MCFL* and *Austin*, this issue warrants considerably more attention than that credited to it by the parties.

quently upheld a Michigan statute that prohibited independent corporate expenditures with respect to candidate elections. While the Court continued to differentiate between provisions regulating expenditures with respect to candidate elections and those regulating expenditures connected with ballot questions, the logical extension of its reasoning in *Austin* may eventually emasculate or overrule *Bellotti*. Given the Supreme Court's tacit approval of *Bellotti* in *Austin*, however, I must follow the teachings of *Bellotti* and strike down § 17–25–10.1(j)'s blanket prohibition on independent corporate contributions and expenditures in reference to ballot questions.

**10.** Again, while the parties presented no evidence at the October 5th hearing with respect to

§ 17–25–10(a)(3)'s segregated fund requirement, the plaintiffs have raised and sufficiently argued the issue as to non-profit corporations in their memorandum in support of their motion for preliminary relief.

**11.** Federal Election Campaign Act of 1971, § 316, as amended, 2 U.S.C.A. § 441b.

**12.** While this holding was technically *dicta* in *MCFL*, a majority of the Court adopted this language as the correct analysis in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 662, 110 S.Ct. 1391, 1399, 108 L.Ed.2d 652 (1990).

## C. *Free Advertising Time*

■ With respect to plaintiffs' challenge to the free advertising time provisions of §§ 17–25–30(1) and (2), I cannot accept the parties blanket assertion that such a measure unquestionably violates the constitutional rights of plaintiff Elizabeth Leonard. This provision is part of a comprehensive scheme of public financing for campaigns that involves many incentives and disincentives for candidates who choose to participate. The serious nature of the problems sought to be addressed by the Rhode Island Legislature and the true complexity of the constitutional analysis clearly mandate more complete treatment of these difficult questions. In light of the above, I am reserving judgment on the application of § 17–25–10(a)(3) to for-profit corporations, and on the public financing provisions until such time as these matters can be thoroughly briefed and argued to the Court.[13]

## V. APPEARANCE OF A CONFLICT

■ With respect to the application of § 17–25–10(a)(3) to for-profit corporations, a further complication has arisen which I believe should be addressed. Subsequent to the October 5, 1992 hearing, a newspaper article came to my attention that raised the specter of a potential conflict of interest in this case.[14] The article quoted Norman G. Orodenker, counsel for Hasbro, Inc., a plaintiff in this action, as "confirm[ing]" that Hasbro would ask the Court to strike down as unconstitutional a section barring corporate contributions to referenda campaigns. It appears further that counsel to Hasbro, Inc., while not record counsel in this matter, is a member of the law firm with which Anthony Bucci, counsel for the defendant Board of Elections, is associated.

These realizations prompted my initiating a telephone conference with counsel on Octo-ber 8, 1992. I questioned them as to the potential appearance of a conflict of interest and asked that they explain their positions. Defense counsel noted that while Hasbro was indeed a client of his firm it was not being represented *in this matter* by a member of the firm. Defense counsel further noted that the Board had made the decision not to defend the corporate contributions provisions before Hasbro joined in the suit. The fact remains, however, that Hasbro's counsel made the announcement to the press. Furthermore, when questioned by the Court, plaintiffs' record counsel, Neil J. McNamara, acknowledged having spoken with both Hasbro counsel and defense counsel with respect to the litigation of Hasbro's claim, though he stated that he dealt with them "quite separately." After this telephone conference, defense counsel submitted a letter to the Court with a detailed explanation of the situation.

I appreciate defense counsel's position that no conflict exists in this case, and I acknowledge that the decision not to defend the corporate provisions was also made independently by both the Board of Elections and the Attorney General.[15] It is the appearance of impropriety, however, that concerns me greatly. I feel strongly that those viewing the case may see a significant conflict, especially in light of the state's concession of the unconstitutionality of all of the corporate contribution provisions. The general public, untrained in the subtleties of the litigation strategy outlined in defense counsel's letter, will undoubtedly be left to wonder why the state chose not to defend the corporate contribution provisions. This is particularly so when it appears that defense counsel and counsel to plaintiff Hasbro are members of the same law firm.

I hasten to add, however, that I attribute no conscious wrongdoing to any of the par-

---

**13.** It is possible that when the parties submit their post-trial memoranda, some of these concerns may be addressed. With respect to § 17–25–10(a)(3), however, the parties have all but conceded the point and do not appear to be planning to brief the issue.

**14.** Katherine Gregg, *Reformer to contest a provision of strict campaign finance law,* Providence Journal Bulletin, September 30, 1992. I attach a photocopy of the article as Appendix A.

**15.** I must note again, however, that the application of § 17–25–10(a)(3) to for-profit corporations was not an issue in the case until Hasbro joined the suit on October 1, 1992, four days before the hearing.

ties or counsel involved. Understandably, the conflict was not immediately apparent because Hasbro joined the suit only four days before the October 5th hearing. On the other hand, in light of the vital public interest involved and the attendant public scrutiny of the proceedings, I believe the circumstances also necessitate a heightened sensitivity to appearances of conflict. This Court, and the distinguished members of the bar who practice before it, must remain acutely aware of our responsibility to preserve the public's trust in the judicial system established uniquely to serve its interests.

I cannot ignore the appearance of conflict presented and, reluctantly, I must order further proceedings on the issue of the constitutionality of § 17–25–10(a)(3) as applied to for-profit corporations. It would be a great service to the Court if the Board of Elections retained independent counsel with respect to this issue. Should the Board fail to appoint independent counsel, the Court will feel free to seek a brief from an amicus. In any event, I will expect briefs from the parties on this issue to be submitted to the Court no later than November 16, 1992. With respect to the remaining provisions, I reserve judgment upon them until such time as I receive all outstanding briefs. I will then notify the parties as to the need for further evidentiary proceedings or briefing.

## VI. CONCLUSION

For the foregoing reasons, I grant, in part, plaintiffs' motion for a permanent injunction. Defendant Board of Elections is hereby *permanently* enjoined from enforcing:

(a) R.I.G.L. § 17–25–10.1(j), to the extent it prohibits corporations from making any

independent contributions and expenditures with respect to ballot questions, *see Bellotti, supra;* and

(b) R.I.G.L. § 17–25–10(a)(3), to the extent it requires non-profit corporations such as plaintiff ACLU to establish a political action committee for the purposes of making contributions or expenditures with respect to ballot questions. *See MCFL, supra.*

As noted above, *supra* note 7, the August 27, 1992 TRO does not cover the enforcement of R.I.G.L. § 17–25–10(a)(3) as it applies to for-profit corporations such as plaintiff Hasbro. While the final determination of this issue remains somewhat unclear, I hereby extend the coverage of the August 27, 1992 Order to enjoin enforcement of R.I.G.L. § 17–25–10(a)(3) as against for-profit corporations, pending my final ruling in this case.

Finally, I reserve judgment on the constitutionality of the remaining provisions. Pending the final disposition of this matter, however, my TRO of August 27, 1992, *as agreed to by all counsel,* will remain in full force and effect. Thus, defendants continue to be enjoined from enforcing:

(a) § 17–25–15, the provision requiring most, but not all, PACs to report all contributions regardless of amount;

(b) § 17–25–10.1(j), the provision banning independent corporate contributions and expenditures with respect to candidates, ballot questions, political action committees and political parties; and

(c) § 17–25–30, the provision providing free television time and higher contribution limits for publicly funded candidates.

SO ORDERED.

# Reformer to contest a provision of strict campaign-finance law

Prov. Journal 7/20/?

By KATHERINE GREGG
Journal-Bulletin State House Bureau

PROVIDENCE — One of the leaders of the successful RIght Now! campaign for a tougher campaign-finance law will ask a federal judge Monday to strike down a section that would prohibit the business community from lobbying for four-year terms for the state's top officers.

Hasbro Inc. is joining a suit filed in U.S. District Court last month by the American Civil Liberties Union of Rhode Island and others. At a hearing Monday, Hasbro will ask the court to strike down as unconstitutional a section barring corporate contributions to referenda campaigns, lawyer Norman G. Orodenker confirmed yesterday.

Alan G. Hassenfeld, president of the Pawtucket toymaker, was chairman of the RIght Now! coalition, which played a critical role in crafting the campaign-finance legislation and mobilizing support for it.

"It's great. It's spectacular," Hassenfeld said the day the law cleared the General Assembly and went to Governor Sundlun's desk.

The new law set lower limits on campaign giving, established tighter reporting requirements, and extended the opportunity for public campaign subsidies to candidates for all statewide offices in future years.

The law also bans corporate contributions to candidates, which is not being challenged in the suit.

The sectioning banning corporate contributions to referenda campaigns was largely unnoticed until the ACLU and several other plaintiffs filed the suit in an effort to get it — and several other provisions — declared unconstitutional.

Yesterday, Orodenker said Hassenfeld had realized that the provision would prohibit Hasbro from promoting approval of a November ballot question on whether to ex-

tend the terms of top officers from two to four years, a key piece in RIght Now!'s reform package.

Hassenfeld was unavailable for comment yesterday.

Several aspects of the ACLU suit are in contention, but the state Board of Elections does not intend to fight the move to strike down the ban on corporate spending on referenda campaigns, according to the board's lawyer, Anthony J. Bucci Jr.

(Bucci confirmed yesterday that he has joined Licht & Semenoff, the Providence law firm with which Orodenker is associated.)

Courts have upheld bans on corporate contributions to individual candidates. But the U.S. Supreme Court upheld the right of corporations to make "independent expenditures to aid or defeat a referendum question" in a 1978 case cited by both Bucci and Orodenker yesterday.

The case resumes Monday before Senior U.S. District Judge Raymond J. Pettine, who has already issued a temporary order barring the state from enforcing the corporate/referenda section and several other sections of the new law.

Sundlun's position on the issue could not be learned yesterday.

H. Philip West Jr., director of Common Cause of Rhode Island, said his organization is still researching a possible legal argument to try to save the ban on corporate spending in referenda campaigns.

Common Cause is not a party to the suit, but West said it may enter the case.

West, who was vice chairman of the RIght Now! coalition, said the 1978 Supreme Court decision was "fairly narrow," involving a ballot question that affected a specific industry; so "to argue that any corporation is free to (spend) as much as it wants is a long reach by analogy."